BOND and others vs. WILTSE and another.

A and others delivered to the treasurer of a railroad company their note for $5,000, payable to his order, at six months after date, upon an express agreement with said company, that the note should be negotiated and its proceeds applied solely to the purchase of iron for said road, in whose early completion they were interested; but before the maturity of said note, the company borrowed $2,000 from B, (no part of which was used in the purchase of iron), and indorsed and pledged to him said note for $5,000, as security for its repayment. The loan not being repaid when it fell due, B gave notice that he would sell said note of $5,000, at public sale, for the purpose of raising the amount of said loan: *Held*, that B, to the extent of the loan made by him on the credit of said note, without notice of facts impeaching its validity, was a *bona fide* holder for value, and that a complaint by the makers of said note, stating the facts and praying that B might be enjoined from selling said note, and that as to any liability of the makers thereof to B, it might be declared void, was bad, on demurrer.

APPEAL from the Circuit Court for *Kenosha* County.

The case is sufficiently stated in the opinion of the court. The co-defendant of *Wiltse* was one Tymeson, whose name was signed, as auctioneer, to the advertisement by *Wiltse* of the sale of the note for $5,000, pledged to him as security for the loan of $2,000.

*Mat. H. Carpenter & Gridley*, for appellants:

1. *Wiltse*, having taken the note of the respondents, without notice of the purposes for which it was made, as a security for the payment of an indebtedness not pre-existent, but contracted at the time of such taking, is a *bona fide* holder for value. *Bay vs. Coddington*, 20 John. R., 637; *Bank of Salina vs. Babcock*, 21 Wend., 499; *Bank of Sandusky vs. Scoville*, 24 id., 115; *Mohawk Bank vs. Corey*, 1 Hill, 513; *Stalker vs. McDonald*, 6 id., 93; *Montross vs. Clark*, 2 Sandf. S. C., 115; *White vs. Springfield Bank*, 3 id., 222; *Young vs. Lee*, 2 Kern., 551; *White vs. Springfield Bank*, 1 Barb., 225; *Seneca*

Co. Bk. vs. Neass, 5 Denio, 329; Affd., 3 Coms., 442; Swift vs. Tyson, 16 Peters, 1, 22; Tarbell vs. Sturtevant, 26 Vt., 513; Scott vs. Betts, Hill & Denio, 363; Agawam Bk. vs. Strever, 18 N. Y., 506. 2. The note of respondents was delivered to the railroad company "to be negotiated and sold," without restrictions as to the manner of negotiation, or the amount of money to be raised thereon, and the note having effected the substantial purpose for which it was designed, the obtaining of money by the R. R. Co., the subsequent diversion of the money cannot effect the validity of the note in the hands of Wiltse. Powell vs. Waters, 17 John., 176; Bank of Chenango vs. Hyde, 4 Cow., 567; Bank of Rutland vs. Buck, 5 Wend., 66; Wardell vs. Howell, 9 id., 170.

O. S. & F. H. Head, for respondents:

1. In a suit against the railroad company, the original holder of the note, the respondents would have been entitled to the relief demanded in the complaint. 2 Story's Eq. Jur., §§ 10, 11; Reed vs. Bank of Newburgh, 1 Paige, 215. 2. Wiltse, having taken the note merely as collateral security, did not acquire the rights of a bona fide purchaser, before maturity, for a valuable consideration. Bay vs. Coddington, 5 John. Ch. R., 54, and 20 id., 637; Stalker vs. McDonald, 6 Hill, 93; Payne vs. Cutler, 13 Wend, 606–7; Rosa vs. Brotherton, 10 Wend., 85; Williams vs. Little, 11 N. H., 66; Clark vs. Ely, 2 Sandf. Ch. R., 166; Kirkpatrick vs. Muirhead, 16 Penn. St., 123; Bertrand vs. Barkman, 8 Eng. (Ark.), 150; Jenness vs. Bean, 10 N. H., 266; Prentice vs. Zane, 2 Gratt., 262; and Bramhall vs. Beckett, 31 Me., 205.

By the Court, COLE, J. A demurrer was filed to the complaint in this case, on the ground that the same did not state facts sufficient to constitute a cause of action. The circuit court held the complaint good, and from the order overruling the demurrer this appeal is brought. We are, however, of the opinion that the demurrer was well taken, and that it should have been sustained.

Without attempting to give the complaint at length, we will say that, according to our understanding of it, it discloses the following facts: On or about the 5th day of May,

1857, the respondents made and delivered to one Z. G. Simmons, the treasurer of the Kenosha & Rockford Railroad Company, their joint and several promissory note, for five thousand dollars, payable to the order of said Simmons, six months after date. It is alleged that the note was made and delivered with the express and positive understanding between the makers and the company, that the note was to be negotiated, and the proceeds thereof applied to the purchase of iron to aid in the construction of the road. About the 14th of May, 1857, the railroad company borrowed two thousand dollars of the appellant *Wiltse*, and gave therefor the promissory note of the company, signed by the treasurer thereof, and pledged the note made by the respondents, as security for the payment of the two thousand dollar note of the company; and all this was done without the knowledge or consent of the makers. As the note of the company was not paid according to its terms, *Wiltse* gave notice, through a newspaper of Kenosha, that he would proceed and sell the five thousand dollar note, indorsed and pledged to him, for the purpose of raising money to pay his debt. And the respondents ask that *Wiltse* be enjoined from selling the note thus advertised, or disposing of it in any manner, until the further order of the court, and that the note, so far as concerns any liability of any or either of them to the holder, *Wiltse*, may be adjudged null and void.

In the elaborate opinion delivered by Mr. Justice STORY, in the case of *Swift vs. Tyson*, 16 Peters, 1, he seemed to affirm the doctrine that the holder of a negotiable instrument, who had taken it *bona fide* for a valuable consideration, in the ordinary course of business, before due, and without notice of facts which impeached its validity, as between the antecedent parties, had a title unaffected by those facts, and could recover on the instrument, although it might be without any legal validity as between the antecedent parties; and that where the note is received in payment of a pre-existing debt, or is taken as collateral security for a precedent debt, the person receiving it should be treated as a *bona fide* holder for value, within the meaning of this rule. And this doctrine he subsequently lays down in his work on Promissory Notes,

§ 195. It is probable that the court, in the case of *Swift vs. Tyson*, understood and supposed that the plaintiff received the drafts and acceptances in that case mentioned, in absolute payment of the protested note of Norton & Keith, which he had previously paid to the Marine Bank, and that the consideration for the transfer of the acceptances was the extinguishment of the protested note, and all action upon it. Such seems to have been the understanding of Mr. Justice CATRON, of the question presented by the record and decided by the court; and with this explanation, the case is not opposed to so many adjudged cases as it would be if it were understood as deciding that the plaintiff was a *bona fide* holder for value, even if he received the acceptances merely as collateral security for an existing debt, the right of action on the original debt not being altered and gone. For it is held in many of the states of the union—and the doctrine seems to be sustained by much good sense and sound reason—that a note or bill taken in satisfaction or discharge of an existing debt, puts the indorsee in the situation of a holder for value, and entitles him to recover upon it without regard to the equities subsisting between the maker and indorser. But it is unprofitable to pursue this discussion further, since it has no controlling effect upon the question arising upon this demurrer. The numerous authorities bearing upon the point as to whether a pre-existing debt may constitute a valuable consideration, within the rule of the *law merchant*, may be found collated and examined in the notes to *Swift vs. Tyson*, 1 American Leading Cases, 335, and *Depeau vs. Waddington et al.*, 2 id., 104.

However, as to the question arising upon this demurrer, we would say that we suppose the doctrine quite well established, that where some new consideration intervenes at the time of receiving the paper, as when advances have been made or responsibilities incurred upon the credit of it, that then the party is considered a *bona fide* holder for value, within the rule for the protection of commercial paper. *Bay vs. Coddington*, 20 John., 637; *Stalker vs. McDonald*, 6 Hill, 93. And the rule seems just and reasonable, which protects the holder of commercial paper, who has acquired it fairly,

in the usual course of business, before maturity, by giving his money, goods or other property upon the strength of it. Why should not the holder be protected, who receives paper under such circumstances? He parts with value for it, and gives a valuable consideration. In the present case it is more than probable that *Wiltse* would not have loaned the railroad company the two thousand dollars, except upon the credit of the five thousand dollar note. He may have known that the corporation was unable to meet its engagements, and that he must look to the collateral security alone to obtain his money. Why, then, should he not have the benefit of this security? The respondents allege, in their complaint, that they made and delivered the note to the railroad company to be negotiated and sold, and the proceeds to be applied to the purchase of iron to complete the road. What right have they now to complain because the note was negotiated and sold? What if the railroad company did pledge it to secure the payment of two thousand dollars, and no more? Wherein are the makers injured by this transaction? Suppose the company pay *Wiltse* the amount of the note which it gave him, then it will be entitled to the security pledged. Suppose he is compelled to go on with the sale, the object of the sale is to realize therefrom the debt owing him from the company. And upon what principle of law or justice the respondents can claim that their note shall be adjudged null and void, and not be available to *Wiltse*, even to secure the payment of the money he gave upon the strength of it, we are somewhat at a loss to understand. Having parted with his money upon the faith and credit of this security, as we think the complaint shows, the appellant would undoubtedly be entitled to hold it even as against equities which might exist between the immediate parties to the paper, if any such there were. But even this complaint does not disclose the fact that such equities existed. In its origin, it was intended that the note should be used by the railroad company for the purpose of raising money. The makers made and delivered it for that declared object. And now, after the note has been put in circulation according to the design of the parties who made it, and after a third party

has made advances to the railroad company upon the faith and credit of the paper, for a court to interpose and declare the note void, would be inequitable and unjust.

We therefore think that the demurrer to the complaint should have been sustained. The order overruling the demurrer is reversed, and the cause remanded for further proceedings, according to law.

NOTE.—It has been held that the *implied* authority of a creditor to sell the property pledged to him as collateral security, if the debt remains unpaid, does not extend to *choses in action* created by private individuals and having no market value. *Wheeler vs. Newbould*, 5 Duer, 29. In the absence of a special power for that purpose, the pledgee cannot, on default and notice to the pledgor, sell such paper either at public or private sale, but must hold it and collect when due, and apply the proceeds to the debt. Nor will proof of a local custom so to sell, be allowed. *Same case*, 16 N. Y., 392.—REP.