## CURTIS vs. MOHR.

18  615
97  277

One who takes a negotiable note before due, in the usual course of business, though only as collateral security, making advances at the time upon the credit of it, is within the protection of the general rule applicable to commercial paper.

The indorsement and delivery of the note to the pledgee, under such circumstances, transfer to him the title, and give him an original and paramount right of ac-

tion upon it against the previous parties, to the extent of the indebtedness for which he holds it as security.

It is not necessary to make the pledgor of the note a party to such an action.

In an action upon a note by one who held it as collateral security for moneys advanced upon the credit of it, where the complaint merely alleged that the plaintiff was the owner and holder of the note, it was error to nonsuit the plaintiff on the ground that his evidence showed that he held it as collateral security.

APPEAL from the Circuit Court for *Dane* County.

Action to recover certain installments of interest on a promissory note executed by the defendant July 1, 1856, to the Watertown and Madison Railroad Company, payable ten years from date, with interest payable semi-annually. The complaint alleges that about December 1, 1856, the railroad company executed its bond (which is set out in *haec verba*), for $5000, payable to L. J. Farwell *or bearer*, with interest coupons attached and containing an assignment of said note to the holder of the bond; that about March 7, 1857, said bond and note were duly assigned and transferred by the railroad company to the Woodbury Bank, a Connecticut corporation, in consideration of $6000 then paid and advanced by said bank to said assignor; that by several intermediate assignments and transfers the plaintiff became, before the commencement of this action, the lawful owner and holder of said bond and note; that nothing had ever been paid upon the note except $200 for interest, and there was due for interest $2400, for which judgment was demanded. The answer admits the making of the note, and that the amount of interest claimed remained unpaid, but denies the other allegations of the complaint, and avers that the note was given without consideration; that it was obtained of defendant by certain fraudulent representations on the part of the railroad company; and that the plaintiff was not a *bona fide* holder for value.

On the trial, the evidence showed that the bond of the railroad company for $5000, with the note in suit, and a mortgage of real estate executed by the defendant to secure the same, attached thereto, was transferred to the Woodbury Bank, with

other choses in action, as collateral security for the sum of $6000, to which amount the bank discounted the notes of the company. To these instruments, when offered in evidence, was also attached what purported to be an assignment of the same by the company (by Thomas L. Lawrence, its treasurer) to *Daniel Curtis* and two other persons, under date August 24th, 1858. At the time of offering said instrument in evidence, plaintiff proved the signature of Mr. Lawrence, and that he became treasurer of said railroad company in 1857; and that the corporate seal of the company was affixed to the assignment. Defendant proved that the company was not doing business in August, 1858, and had no active officers. Plaintiff then proved that at the time said instruments passed into his hands, the names of the assignees and the date were not inserted in said assignment, and that they were subsequently inserted, without his knowledge or consent, by an attorney in whose hands the instrument had been placed for the purpose of bringing suit upon them. A portion of the collaterals so transferred to the bank were sold, and $2420.61 realized thereon, leaving due on the company's notes $3579.39. The bank having failed and gone into the hands of receivers, the latter, in pursuance of an order of court, sold to the plaintiff the notes held by the bank against the railroad company, and secured as above stated. On these facts the court nonsuited the plaintiff, on the ground that he held the defendant's note only as collateral security for the amount due on the notes of the railroad company, and was not the owner thereof as alleged in the complaint.

From the judgment of nonsuit the plaintiff appealed.

*H. W. & D. K. Tenney*, and *P. L. Spooner*, for appellant: •

It was not necessary to state in the complaint that the note was held as collateral security. 7 Wis., 492; *Gardinier v. Kellogg*, 14 id., 608, and cases there cited; 2 Bosw., 272. Such a statement is of no consequence to a defendant, except that it may aid him in his defense. But if the plaintiff, though he

has not alleged the fact, proves it on the trial, the defendant derives the same advantage from it. The effect of the proof is simply to allow the defense to come in as to so much of the note as may not be required to pay the debt for which it was pleged. *Bond v. Wiltse*, 12 Wis., 611; *Jesup v. City Bank of Racine*, 14 id., 331; 1 Ind., 288.

*Hopkins & Foote*, for respondents:

The statute requires every action to be brought in the name of the real party in interest. The *owners* of the paper are the real parties in interest; and if there is more than one owner, and the ownership of the one suing is denied, and he, by his own evidence, shows that he is not the owner of the whole claim, he must fail in his suit. A pledgee has only a special interest in the property, not the absolute title. *Brownell v. Hawkins*, 4 Barb., 491; 2 Caines' Cases, 200; 8 Johns., 97; 10 id., 472; 2 Kent's Comm. (5th ed.), 577. In such cases the pledgor is a necessary party, because of such ownership. 7 Johns. Ch., 144; 4 Kern., 322; 1 Hilton, 114; 2 Kern., 495–507; 24 Barb., 656; 29 id., 383. *Hilton v. Waring*, 7 Wis., 492, is opposed perhaps to this view of the case to some extent. In that case, however, the complaint set out the fact that the plaintiff was pledgee. But the question involved in that case should be re-examined, and the case, so far as it holds that the pledgor is not a necessary party, should be overruled as in plain violation of the statute upon the subject of parties.

*By the Court*, COLE, J. We suppose the law to be perfectly well settled that where a person takes a negotiable promissory note before maturity in the usual course of business, even as collateral security, and makes advances at the time upon the credit of such note, he is considered by all the authorities as a *bona fide* holder for value, within the rule for the protection of commercial paper. The indorsement and delivery of the note, under such circumstances, transfer to the holder the title to the instrument, and give him an original and paramount right of

action upon it against the previous parties, so that he is not affected by the equities existing between them. There has been something of a conflict among the authorities whether a party taking the negotiable promissory note of a third person as collateral security for a pre-existing debt, without any new consideration intervening, was in the situation of a holder for value, so as to come within the rule ; but there is none whatever upon the question whether the holder is a purchaser for value, where a new and distinct consideration intervenes at the time of the transfer of such note. In the latter case, the language of all the authorities is, that the party is an innocent holder for value. It would be an idle display of research to cite the numerous cases where this point is directly ruled. Several will be found reported, decided by this court, where we have followed the uniform current of the authorities upon this branch of law. It is sufficient to refer to the cases of *Bond v. Wiltse*, 12 Wis., 611 ; *Cook v. Helms et al.*, 5 id., 107 ; *Jenkins v. Schaub*, 14 id., 1. It is of course an obvious and necessary consequence of these decisions, that, by the negotiation and transfer of the note under such circumstances, the holder acquires a perfect title to the instrument, and has his right of action upon it against the previous parties. Otherwise he would not be protected, and the instrument in his hands would not be discharged of all equitable and legal defenses to which it may have been subject before it came to him.

In this case it appears the court nonsuited the plaintiff on the ground that he had alleged in his complaint that he was the owner and holder of the note described in the complaint, while the evidence showed that he held said note only as collateral security for the amount due on the notes of the railroad company. It is not denied that money was paid and advanced on the strength and credit of this note, and to the amount for which the paper had been pledged the plaintiff's right of recovery was clear. To that extent, at least, he was the owner of the instrument. It is claimed that the plaintiff could not

recover on the note a sufficient amount to satisfy the debt for which it was pledged, without making the pledgor a party. We have been referred to no case which decides that the holder of a promissory note as collateral security for money advanced upon the credit of such note, could not prosecute an action upon it to the point of satisfaction of his own debt. Indeed, such a decision would be at variance with all the rules and principles of law applicable to commercial paper. How could effect be given to the well established rule that such a holder is entitled to the protection of a *bona fide* holder for value, unless he may recover upon the instrument in his own name? To give him the benefit of that rule, the transfer is held to give him the title to the instrument. The complaint, therefore, in this case properly alleged that the plaintiff was the owner of the note, and it was unnecessary to aver that he received it as collateral security for the payment of the notes of the railroad company. *Hilton v. Waring*, 7 Wis., 493.

In the absence of any evidence to the contrary, the indorsement of the note is presumed to have been made at or about the date of the note. The plaintiff saw fit to state in the complaint the circumstances under which the various indorsements were made. We see nothing in this to prejudice his right to recover.

The judgment of the circuit court is reversed, and a new trial ordered.