## KINKEL v. HARPER.

1. COMMERCIAL PAPER.
To entitle the holder of commercial paper to maintain his action free from the equities which existed between the maker and payee, it is necessary that the paper should have been transferred in the usual course of business and according to the common customs of the commercial world for value before maturity, and to one without knowledge of the matters out of which the equities arise.

2. SAME.
If the note sued on was one of a number given by divers persons to a ditch company for the purpose of enabling it to raise money on its debenture bonds to complete its canal, the transfer of the notes to a trustee to hold and collect for the payment of the bonds which were

issued as a part of the same transaction would be in accordance with the ordinary course of business, and, all other conditions being met, would give the trustee a title not subject to the equities which otherwise might prevail as between the maker and the company.

3. SAME.

Wherever a bill or note is disposed of for a valuable consideration, the holder is not bound to inquire whether the indorser has performed or will be able to perform the agreement into which he has entered, so long as there is nothing suspicious or out of the usual course of business in the circumstances attending its issue.

*Appeal from the District Court of Morgan County.*

Mr. H. N. HAYNES, for appellant.

Mr. W. A. HILL, for appellee.

BISSELL, P. J., delivered the opinion of the court.

This action started as a simple suit on a promissory note, dated the 15th of February, 1890, whereby one year after date the appellant Kinkle promised to pay The Bijou Reservoir and Canal Company $200 with a certain specified interest. In the original complaint Harper, the appellee, simply averred an indorsement and transfer to him as trustee, whereby, as he pleaded it, there came to him the right of action against the maker. On demurrer the complaint was held insufficient, apparently because it failed to state the terms of the trust out of which the trustee's title sprung. We are not concerned with the regularity or propriety of this ruling. The plaintiff accepted the result and filed an amended complaint, which the defendant answered. The answers were demurred to and on the issue of law thus formed judgment was rendered for the plaintiff and the case is brought here by appeal. To apprehend the situation we are compelled to state the general features and allegations of the complaint as well as the substantive matters contained in the two defenses which were adjudged insufficient. The complaint set out the instrument whereby the trust was created. Omitting

such of the details as are not essential to the discussion, the instrument in general recited that the Reservoir and Canal Company on the date of its execution, March 1, 1890, assigned to John M. Wallace, as trustee, sundry notes of the stockholders of the company amounting to $20,000. The notes were stated to have been given by various persons and to bear date the 15th of February, 1890, and to be payable one year after date with interest. There was also a recitation of the transfer to the trustee of one hundred shares of the stock of the company of the par value of $10,000. The transfer of the notes and the stock was alleged in apt and legal terms and was stated to have been made to secure the payment of a series of sixteen debenture bonds of the value of $1,000 each, which the company issued on that date. These bonds were to be negotiated to raise funds for the purposes of the company. Whether arrangements for the disposition of the bonds had been antecedently made, or were to follow the execution of the trust and the delivery of the securities to the trustee, does not appear. There was attached to the writing creating the trust a list of the various notes. The complaint contained a copy of the receipt which was issued to each of the makers of the notes, which in general expressed the receipt of a note and its amount, together with a statement that it was one of a series of notes aggregating $20,000 taken for subscriptions to the stock of the company at the date named. According to the terms of the receipt, fifty per cent of the stock was to issue when the note should be paid. The remaining fifty per cent, to which the subscriber would be entitled if all the notes were paid, was subject to a deduction computed and based on the proportion which the unissued fifty per cent of the stock would bear to whatever amount of notes might be unpaid and uncollectible. From this it will be seen that fifty per cent of each subscriber's stock was subject to an uncertain and an indefinite deduction, and only one half was to be delivered on the payment of his paper. The schedule of all the notes was annexed to the pleading. After setting up these facts, the plaintiff set

out the note and alleged that on the 1st of March, for a " valid consideration," the notes were sold and assigned to the trustee. The original writing provided for a successor in trust, and by proper averments it was made to appear that Harper, who brought the suit, was the legitimate successor. The pleader then averred that enough had not been collected from the notes and capital stock to pay the debenture bonds, and concluded with an allegation that the greater part of the bonds were unpaid.

One of the difficulties in the case is rendered apparent by this statement. It springs from the failure of the pleader to state some facts which must appear to entitle him to recover. It likewise renders it exceedingly difficult to state what the law is by which the rights of the parties must be measured and determined. There is no averment of the absolute issue and sale of the sixteen bonds. So far as can be gathered, the bonds were probably issued by the company, but whether they were disposed of and the cash received by the trustee or the company nowhere appears. The sale of the bonds and the receipt of the purchase price are facts absolutely essential to the application of the principles for which the appellee contends. They are likewise necessary to the ascertainment of the validity of the defenses, as will be very apparent from a succinct statement of their substance.

Two matters were pleaded separately. The first was a want of consideration. The basis of the plea consisted of allegations respecting the terms and character of the subscription and the status of the capital stock of the company. The pleader averred a representation by the company of its possession of three hundred shares of unsubscribed capital stock of the par value of $100 per share. Two hundred shares were said to be open to subscription and the other one hundred was to be deposited with the trustee as collateral security for the debenture bonds about to be issued. So far as concerns the particular note in dispute, it was alleged to have been given in payment of a subscription for two shares of the capital stock of the Bijou Company. It was next

averred there was no unsubscribed capital stock in the treasury of the company or in its possession and open to subscription other than the one hundred shares, which, as stated, were issued and turned over to Wallace. There follows an allegation that the note was not transferred to the trustee in the due course of business, but that he took title in such way as to render the note in his hands open to the same equities and defenses as would be admissible were the suit brought by the company itself.

The second defense alleged a failure of consideration, and in much detail, which need not be repeated here, set up the scheme which led to this litigation. Stating no more than is necessary to make the matter plain, it was set out that the Canal Company had built a canal from the source of supply to a point a few miles outside of the limits of Fort Morgan. The company desired to continue the construction of the canal to a point beyond the town, whereby the water would be available to these various subscribers. The company advertised and stated its intention to continue the construction and to devote the money which would be realized from the sale of its bonds to this purpose, using this capital solely for this object. It was alleged the subscriptions were procured upon the faith and strength of these representations, and to secure the advantages which would result to the subscribers by the extension of the canal and the delivery of water. The answer then proceeded to set out in considerable detail the failure of the company to carry out its promises and the application of the funds to other uses than those to which the company had agreed to put them. It was stated the company had used the money to pay old debts, had totally failed to complete the canal and had never delivered the water according to its declared intentions and according to its agreement with the subscribers. To this answer the plaintiff demurred and the court rendered judgment in his favor.

The difficulties with which we are beset in any attempt to state the law which must control this case must be apparent from a careful consideration of this statement. The plaintiff

insists that he is a holder of commercial paper for value and entitled to maintain his action upon it, regardless of any breach of the company's agreement and that he took it free from the defenses to which it would be open had the suit been brought by the corporation. On the other hand the defendant insists the trustee stands in no such relation to the paper as would a holder for value, who had received the note before its maturity, and that the circumstances of the transfer are not such as to preclude the assertion of these defenses. We can only indicate our general ideas respecting this matter, for there is in the case no history of the transaction which enables the court to speak definitely and positively respecting the law which must be applied to the case. We indicate our conclusions, expressly reserving to ourselves the right to make whatever modification may be rendered essential by any proof which may be ultimately introduced on trial of the case or by any modification of the pleadings which may present a sharply defined issue and statement of fact to which it may be applied. To entitle the holder of commercial paper to maintain his action free from the equities which would inure to the benefit of the maker, had the suit been brought by the original payee, it is unquestionably necessary that the paper should have been transferred for value before maturity to one without knowledge of the matters out of which the equity arises. The circumstances of the transfer frequently furnish a controlling consideration by which the title of the holder is ascertained and determined. A transfer in the usual course of business and according to the common customs of the commercial world is as much essential to the integrity of the holder's title as is the absence of the knowledge of the equities on which the maker insists. *Roberts v. Hall*, 37 Conn. 205; *Railroad Co. v. National Bank*, 102 U. S. 14; *Helmer v. Commercial Bank*, 28 Neb. 474.

The difficulty is to settle whether the circumstances of the transaction make the transfer one according to the usual customs of trade, or constitute such a departure as to open the action on the note to the defenses pleaded. Each case

must evidently be determined on its own facts. In the case cited from Connecticut the note was transferred to a trustee for the benefit of certain creditors who were named, and the proceeds of the note when it should be paid were to be devoted to the liquidation of the debts of the creditors as specified. In a carefully considered opinion the supreme court of Connecticut arrived at 'the conclusion that under those circumstances the transfer was not in the usual course of business and the note was open to the defenses which would have been available had the suit been brought by the original payee. We do not intend to criticise or disagree with this authority, but we do conclude the circumstances of this case and the relation of the parties, should the proof show them to be what they are now indicated, remove this case from the operation and scope of that decision. So far as we are able to gather from these pleadings the note sued on was one of a very large number given by divers persons for the evident purpose of enabling the company to raise money on its debenture bonds to complete the construction of its canal. If such is proven to be the fact, then the transfer of these various notes to a trustee to hold and collect for the payment of the debenture bonds which were issued as a part and parcel of the same transaction would be a transfer quite in accordance with the usual custom in such cases where notes are taken in subscription for stock and the notes are to be pledged to raise funds for the operation of the company. Illustrations of transactions of a similar nature are to be found in the authorities which are afterwards cited, and the proceeding is quite in harmony with the general practice of corporations in such cases. The only capital which a corporation has to carry on its operations is what results from the sale of stock. When stock is sold, the consideration can be taken in cash, in property, or, as in this case, in notes, but in any event, whatever the consideration may be paid in, it must be available to the corporation in order to enable it to carry out its corporate purposes and objects. It can scarcely be supposed a corporation would

issue its stock for the notes of its subscribers without power to dispose of these notes to realize the funds essential to its operations. The one presumes the other. In the present case the parties giving the notes were probably advised of the purpose of the company to issue bonds and thereby raise money for the completion of the canal. Whether the makers of the notes were directly advised that these notes were to be pledged as security-for the payment of the bonds the case does not disclose, though the ultimate proof may show it. Whatever the fact may be the makers of the notes must be taken to have understood those notes would be used and disposed of to raise money for the operations of the company. The plan which the company adopted of turning the notes over to a trustee, together with some of its capital stock, to hold and collect and devote the proceeds to the payment of the bonds, was not an unusual proceeding, nor one which must as a matter of law, without proof respecting it, be taken as contrary to the ordinary course of business and the uses of trade. If the proof then sustains these allegations, we must conclude the transfer of the note to the trustee was in the ordinary course of business, and all other conditions being met, gave him a title which would not be subject to the equities which otherwise would prevail as between the maker and the company.

The chief difficulty is, we are not advised by the pleading whether the debenture bonds were in fact issued for a valuable consideration paid by the holders in whose interest the suit is brought. If the pleading or the proofs should show the issuance and sale of the bonds by the company on the strength of this created trust, then the trustee would take the note for a valuable consideration paid before maturity and hold it free from the equities which would otherwise prevail as between Kinkel and the company. The complaint is defective in this particular and it should be amended when the case returns to the trial court.

It follows from this conclusion that the plea of a want of consideration would not be available as a defense. Whether

another answer to the contention could be found in the circumstance of the admission that the trustee held one hundred shares of stock as security for the payment of the bonds, which would be relieved from the operation of the trust if the notes were paid, and the company would thereby come into the possession of sufficient stock to satisfy the subscription of the maker, is a matter about which we need not speculate. It is possible an answer may be found in that suggestion.

The appellee insists the terms of the trust and of the receipts advised the trustee of the purpose for which the notes were given, and he was bound to know whether the company was able to carry out its contract with reference to the subscription, and for this reason the suit on the notes should be open to the defenses pleaded.   We cannot assent to this proposition.   According to the terms of the arrangement the stock was not deliverable upon the subscription and the execution of the note, but only on its payment, which was a year from its date, and then only as to fifty per cent of it; the balance of it being subject to a pro rata deduction which might be rendered essential by the nonpayment of some of the paper.   It is a general rule to which there are few exceptions that the knowledge of the holder of a note that it was not to be paid except on a specified contingency would not destroy his title as a *bona fide* holder for value, even though the contingency had happened which would defeat a recovery if the suit had been brought by the original payee.   Wherever a note is valid in its inception, a default in the performance of an executory agreement will not defeat a recovery by the holder, even though he may have been advised of the existence of the agreement.   The executory contract in this case was an agreement to deliver stock.   A failure to deliver could not be made a matter of defense, even though that executory contract was, as between the payee and the maker, the consideration upon which the note was executed.   Whenever a bill or note is disposed of for a valuable consideration, the holder is not bound to inquire whether the indorser has performed or will be able to

perform the agreement into which he has entered, so long as there is nothing suspicious or out of the usual course of business in the circumstances attending its issue. *Miller v. Ottaway*, 81 Mich. 196; *Adams v. Smith*, 35 Me. 324; *Patten v. Gleason*, 106 Mass. 439; *Nat. Bank v. Cason*, 39 La. Ann. 865; *Davis v. McCready et al.*, 17 N. Y. 230; *Craig v. Sibbett et al.*, 15 Penn. St. 238; *Bond v. Wiltse et al.*, 12 Wis. 611.

The situation of the trustee is pressed upon the attention of the court as a basis for the contention that his knowledge concerning the transaction must be taken to be the knowledge of the holders of the bonds and therefore operative to deprive them of the benefit of the protection afforded *bona fide* holders for value. Wallace is said to have been intimately connected with the Canal Company, and Harper, his successor, to have likewise sustained some relation to the corporation, and to have been an officer of the bank which received and paid over the money coming from the sale of the bonds in liquidation of an old debt. The knowledge of these parties is therefore claimed to be the knowledge of the holders of the bonds. If the proof sustains the allegations of the complaint and answer, and also the inferences which we have permitted ourselves to indulge in respecting the transaction, the position is not well taken. When the trust was created and the stock and the notes were turned over to the trustee, the bonds had not, so far as we are now able to discover, then been sold and they were not in the hands of the present holders. Whether, in point of fact, the bonds had been issued ready for delivery does not appear. This, however, would be unimportant if the bonds remained unsold when the trust was created. At that time Wallace, the trustee, and Harper, his successor in trust, were the agents of the company alone, by which they had been selected and appointed. They bore no relation whatever to the subsequent *cestuis que trust*, who assumed that relation by virtue of the purchase of the bonds. If such be the fact, the buyers cannot be charged with the knowledge which may have been possessed by the trustee. As was said in a well consid-

ered case, which was afterwards followed by the supreme court of the United States: "The trustees are not to be regarded as the agents of the purchasers of the bonds and mortgages assigned to them. No consideration proceeds from them. They were mere assignees of those securities, coupled with no interest, in trust to hold them as security for the payment of all the mortgage bonds that should thereafter be sold or negotiated by the company." *Curtis et al. v. Leavitt,* 15 N. Y. 9–194; *Commissioners v. Thayer,* 94 U. S. 631.

If the ultimate proof shall sustain the allegations of the pleadings as they now are, and as they may be when amended, the rights of the parties must be measured by the rules which are here indicated. Unless there should be some very wide variance between the case as it is made by the present pleadings and the proof as it may be offered, the plaintiff must recover on the note and the defenses will be no bar to the action. If the parties desire to continue the litigation, the plaintiff should amend his complaint in the particulars suggested. If there is no controversy as to the facts and they remain as indicated and our inferences prove accurate and no defense is put in other than what is stated in the present action, judgment must of necessity go for him.

The case is therefore reversed. The plaintiff will be permitted to amend his complaint, and the defendant to answer as he may be advised otherwise than as his defenses may be controlled by this opinion.

*Reversed.*