MARIA WINCHESTER and ROBERT LEMMON, *vs.* THE BALTIMORE AND SUSQUEHANNA R. R. COMPANY.

A bill for an injunction, filed on the 16th of December 1852, did not require the defendant to answer on oath; after answer under oath the injunction was, upon motion, dissolved by an order passed the 23rd of March 1853. Upon appeal from this order, HELD, that by the act of 1852, ch. 133, the answer cannot be used as evidence against the complainant.

Actual knowledge is equivalent to registration; but such knowledge must be shown by proof, or, at least, such circumstances as are sufficient to put the party upon inquiry must be proved.

The president of a corporation executed to certain of its directors a mortgage of land, to which his wife had an equitable claim by virtue of an unrecorded deed to her. HELD:

That having acted in the transaction not for the corporation, but solely for himself, his knowledge of his wife's equities is not the knowledge of the company, and cannot affect its rights, unless shown to have been communicated to it.

An officer of a corporation cannot bind the latter in a case where he professes to represent only himself, and to deal with the company as if he had no official relation to it.

W. purchased certain real estate, three-fourths for other parties, and one-fourth with the separate estate of his wife and for her, and took the deed for the whole in his own name. HELD :

That the fact of buying for, and conveying the three-fourths to, such other persons, one of whom was a director of a corporation, did not inform such director that the other fourth was for the grantor's wife, and notice thereof to the corporation could not be established thereby.

A mortgage recited that the grantor "is indebted" to the grantee in a certain sum, for which "he has given" his checks, &c. HELD, that this language does not justify the inference that it was given for an *antecedent* debt.

APPEAL from the Equity Side of the Superior Court of Baltimore city.

The allegations of the bill in this case, which was filed by the appellants against the appellee, on the 16th of December 1852, are sufficiently stated in the opinion of this court.

The injunction was granted as prayed. The answer, which was made under oath and filed on the 8th of January 1853, denies all notice, either actual or constructive, of the conveyance to Mrs. Winchester, and sets up the defence that the company was a *bona fide* purchaser without notice. It admits that George Winchester was president of the company at the date of the mortgage executed by him to Howard, Hodges and Leakin, three of its directors, but avers that in so doing he acted solely in his individual capacity, and not for the company.

Several exhibits were then filed in the cause by the parties: 1st. The deed dated the 31st of July 1830, from the sheriff of York county, Pennsylvania, conveying the whole of the Yorkhaven property to George Winchester, acknowledged by the sheriff in open court on the 4th of August 1830, but not recorded until the 18th of August 1834. 2nd. A deed from Winchester and wife, dated 12th of January 1831, and re-

corded the 18th of August 1834, conveying three-fourths of the property to Leakin, Glenn and Freeman, who, according to the recitals of the deed, were each at the time of the purchase interested in and entitled to one-fourth thereof. 3rd. The deed from Winchester and wife, conveying to Lemmon, as trustee of Mrs. Winchester, the remaining fourth of said property, dated the 1st of July 1831, but not recorded until the 13th of February 1841. It recites that Mrs. Winchester was entitled to one-fourth of the property, the purchase having been made in trust for her, and the purchase money paid out of her separate estate. 4th. The mortgage by George Winchester to Hodges, Howard and Leakin, three directors of the rail road company, of one undivided fourth of said property. This mortgage recites, that "whereas the said George Winchester is indebted to the parties of the second part in the sum of $4711, for which he has given his twelve checks, payable," &c., "and for the purpose of securing the payment thereof hath agreed to execute these presents," and bears date the 9th of April 1833, and was recorded the 5th of July of the same year. 5th. A deed from Winchester and wife, conveying to John Glenn, in consideration of $2000, one undivided fourth of said property, dated the 20th, and recorded the 24th, of February 1834. 6th. A deed from Glenn, reconveying this same fourth to Lemmon, as trustee for Mrs. Winchester, in consideration of $4000, dated the 15th of November, and recorded the 1st of December, 1838. 7th. A record of the proceedings in the court of common pleas of York county, Pennsylvania, by the rail road company to foreclose their mortgage. 8th. A certified copy of the act of the State of Pennsylvania of 1775, relating to the acknowledging and recording of deeds.

A motion to dissolve the injunction was then made, and thereupon the court, (FRICK, J.,) dissolved the same by an order passed the 23rd of March 1853, from which the complainants appealed. In this court it was agreed that the exhibits filed should be treated as evidence, as if duly proved under a commission.

30     v.4

The cause was argued before LE GRAND, C. J., ECCLE-
STON and TUCK, J.

*Charles H. Key* for the appellants.

The act of 1852, ch. 133, prevents the answer from being
used as evidence, and the appellants therefore insist:

1st. That as the deed from Winchester to Lemmon of
1831, recites the fact that the property thereby conveyed was
originally purchased with Mrs. Winchester's separate estate,
this declaration of Winchester, made when in possession with
title, shows his wife's equity, and binds the rail road company,
his subsequent grantees, who are thereby precluded from de-
nying such equity, and cannot claim against it, except by
showing that they were subsequent purchasers for a valuable
consideration without notice. 3 *H. & J.*, 426, *Dorsey vs.
Dorsey.* 7 *Gill*, 375, *Richards and Wife, vs. Swan.* 4
*Paige*, 220. 2 *Md. Rep.*, 365, *Faringer vs. Ramsay.*

2nd. Winchester being at the time of the execution of the
mortgage to the company its president, and in that capacity
a member of the board of directors, his knowledge of the pre-
existing deed to his wife was the constructive knowledge of
the company, and notice to him was notice to the company.
2 *Hill*, 451, *Bank of United States vs. Davis.* 4 *Paige*, 136,
*Fulton Bank vs. Sharon Canal Co.* Any thing which puts a
party upon inquiry is sufficient notice in equity. 1 *Md. Rep.*,
415, *Price vs. McDonald.* 3 *Md. Rep.*, 340, *Baxter and Wife,
vs. Sewell.* 5 *Gill*, 483.

3rd. The mortgage to the company was given as security
for a pre-existing debt, as appears upon its face, and does
not constitute the mortgagees purchasers for value, so as to
support the mortgage against the equitable claim of Mrs.
Winchester. 22 *Pick.*, 243. 1 *Dev. Eq.*, 106. 4 *Paige*,
220. 4 *Scammon*, 19. 1 *Sm. and Mar.*, 49. 10 *Paige*, 180.

4th. The original deed of the sheriff, though executed in
1830, was not recorded till 1834, and the deed of 1831 being
therefore a deed of a mere equity, was not itself required to
be recorded, and consequently the mortgage of 1833 did not

DECEMBER TERM, 1853.          235

Winchester and Lemmon, vs. Balto. and Susq. R. R. Co.

affect its validity. The subsequent recording of the sheriff's deed does not affect this view of the case, but the mortgage being of an equitable title, the mortgagee was bound to take notice of equitable incumbrances, and can only claim subject to them. 7 *Cranch*, 34. 7 *Pet.*, 271. 4 *Dessaussure*, 274. 11 *Searg. and Rawle*, 389. 7 *Barr.*, 165, 340. 5 *Gill*, 481.

5th. The neglect of the appellees to enforce their mortgage for nearly twenty years, is almost conclusive evidence of its having been abandoned by them.

*J. Mason Campbell* for the appellees.

The sheriff's deed, which is the common source of title of both parties, was acknowledged in open court, and it is this *acknowledgment*, and not the *recording*, which in Pennsylvania passes the *legal title*. 2 *Wharton*, 469. 10 *Watts*, 25.

The bill attacks the mortgage to the company solely on the ground of notice of the prior deed of 1831, and the answer denies notice, either actual or constructive. The act of 1852, ch. 133, does not apply to the case of a motion to dissolve an *injunction*, for if it did, there never could be such a motion, and it could hardly be supposed the legislature intended to work such a revolution as this in chancery proceedings. But the act of 1853, ch. 344, makes the answer in this case of equal force as evidence as the bill, and that such laws, *retrospective* in their operation, are *constitutional*, see 7 *Pet.*, 239.

The deed of 1831 is out of the case, and cannot be relied on as evidence of title. The bill sets it up not only as a deed of that date, but as *continuing* to the present time, but in 1834, Mrs. Winchester conveyed this *identical* property to *Glenn*. This is a *repudiation* of the deed of 1831; the two are in conflict. The subsequent deed from Glenn in 1838, reconveying the property to her, is the only title she now has, and this confers no rights as against the company, being subsequent to its mortgage.

The mortgage upon its face shows, that Winchester was then indebted to the company, and in consideration of the mortgage, *time* was given, as appears by the checks recited

in it, and this is sufficient to make the company purchasers for a valuable consideration. 2 *White and Tudor's Leading Cases, Basset vs. Nosworthy,* (71 *Law Lib.,* 104, 105, 106.)

But suppose there was an equity, how have the company notice of it? Where a director is acting for himself in his *individual character,* his knowledge thus obtained is not the knowledge of the corporation. *Story on Agency, secs.* 140, (*a,*) 140, (*b.*) 2 *Hill,* 451. 9 *Barr.,* 27. 3 *Md. Ch. Decisions,* 381.

The registry acts of this State apply to conveyances of *equitable titles.* 3 *Md. Ch. Decisions,* 383, 384. And the act of Pennsylvania of 1775, set out in the record, expressly requires deeds, which in any way affect *equitable* as well as legal titles, to be recorded, and that conveyances of equitable titles in that State are required to be recorded, see 10 *Watts,* 13. 11 *Searg. and Rawle,* 389, 392.

*S. T. Wallis* for the appellants, in reply.

The act of 1852, ch. 133, expressly enacts, that in *no case* shall the answer be evidence unless read at the *hearing,* not the *final* hearing. The act of 1853, ch. 344, though it cannot operate upon this case, having been passed after it was decided and pending the appeal, is yet a legislative construction that the previous act of 1852 does apply to the present case.

The *acknowledgment* of the sheriff's deed in open court does not pass the legal title. The case in 2 *Wharton,* 469, only decides that a sheriff's deed shall not have the effect of an ordinary deed until acknowledged in open court, but it is also required to be recorded like any other deed to give it validity. 10 *Watts,* 26.

The property was purchased with Mrs. Winchester's money, and there can be no doubt Winchester's declaration of that fact in the deed of 1831, is binding upon the company, his subsequent grantee, as the cases cited on this point show. The deed to Glenn in 1834, conveyed all the equitable title of Mrs. Winchester, and though she was thereby estopped from claiming as against *Glenn,* yet *he* could have set up

DECEMBER TERM, 1853. 237

Winchester and Lemmon, vs. Balto. and Susq. R. R. Co.

these *equities as against the company*, and so could his *grantee*, Mrs. Winchester. There is nothing then to stand against the equity of Mrs. Winchester, unless the company are *bona fide* purchasers without notice.

If notice is given to a party who acts as the agent of a corporation, the latter is affected by it. The case in 2 *Hill*, is the very case at bar. The mortgage was not to the company itself, but to three of its directors, and Winchester, as president, must have joined in their appointment. He was therefore the agent of the company as well as of his wife.

But again, if the circumstances of the case are sufficient to put the party upon inquiry, this is notice. Here Leakin, one of the directors taking the mortgage in behalf of the company, was one of its directors, and his knowledge was clearly the knowledge of the company. Now he was concerned in the original purchase, was tenant in common of one-fourth of this property, and therefore bound to know the title of his co-tenants in common. But, besides this, the deed of the three-fourths to him, and others, recites, that the property was purchased with the money of others, and not that of Winchester, There is no case to be found where one tenant in common is not regarded as having knowledge of the title of his co-tenants.

Again, was the company a *bona fide* purchaser for value? The mortgage was clearly given for an antecedent indebtedness. The fact that the mortgagor gave his checks does not alter the case—they were given for an existing debt—the taking of them was for the benefit of the company. If this makes the company *bona fide* purchasers, every mortgage would have that effect.

A party who takes an *equitable* title, takes it with notice of all equitable incumbrances upon it; with notice that something is to be done to make it perfect, and this puts him upon inquiry as to all the imperfections pertaining to the deed. 7 *Cranch*, 34. 7 *Pet.*, 231. 5 *Gill*, 481. 7 *Barr.*, 340.

LE GRAND, C. J., delivered the opinion of this court.

This is an appeal from an order of the Superior court of

Baltimore city dissolving an injunction, which had been previously granted by that court on the filing of the bill of the appellants.

The equity of the bill may be stated thus:—it avers and charges, that George Winchester, the former husband of one of the parties, becoming possessed of a portion of the separate estate of his wife, invested it in real estate lying in York county, Pennsylvania, taking a deed for the same in his own name; that this occurred in the year 1830; that the said Winchester and wife, by their joint deed, in the year 1831, conveyed one-fourth part of the property, so alleged to have been purchased with the moneys of the wife, to Lemmon, as trustee, for her sole and separate use; that after the execution of this deed it remained in possession of Winchester, who neglected to have it recorded, which was not done until the year 1841; that in the year 1833, Winchester mortgaged the same property to certain directors of the rail road company, he being at the time its president, to secure the payment of an alleged indebtedness of himself, "the said company *in fact* having *actual* knowledge and notice of the interest and claims" of the appellants, and "*with such actual* notice, did, nevertheless, accept the said mortgage." The bill then proceeds to state, that the company is about to foreclose the mortgage, and prays an injunction to prevent it from doing so.

The bill does not require the answer of the defendant to be under oath. It was filed on the 16th of December 1852, and by the act of 1852, ch. 133, the answer of the defendant cannot be considered as evidence against the complainants. It provides, "that no answer of any defendant to any bill or petition, to be hereafter filed in the courts of equity in this State, shall be evidence against the complainant or complainants, unless, by the bill or petition, such answer shall be required to be made under the oath of the respondent or respondents; or unless, at the hearing of the cause, the complainant or complainants shall read the answer as evidence, in which case it shall have the same effect as to the party reading the same, as if it had been required to be made under oath."

Winchester and Lemmon, *vs.* Balto. and Susq. R. R. Co.

Putting the answer out of view, the case, as presented by the bill, is simply this:—the complainants had a claim on, and an equity in, the property in question, and the company, with *actual* notice of such claim and equity, took a conveyance of it.   There can be no doubt that *actual* knowledge is equivalent to registration, and that if, the company had such notice, it took the property subject to the equities of the complainants.   There is nothing, it is true, in the *evidence* to show actual knowledge; but, on the other hand, there is nothing to disprove it, and, in the present condition of the case, the averments of the bill must be assumed to be correct, except, (under the agreement filed in the cause,) in so far as they are rebutted, and we have already said, that under the act of 1852 the answer of the defendant cannot be invoked for that purpose on this appeal.

These observations dispose of the case as made by the bill and proof; but inasmuch as the act of 1832, ch. 302, makes it incumbent upon us to decide and determine all the questions arising out of the record, we proceed to do so.

It was urged in argument, that inasmuch as George Winchester was the president of the company at the time he executed the mortgage, any knowledge which he had in regard to the rights and equities of his wife must be taken as the knowledge of the company.

It is undoubtedly true, as a proposition of law, that the principal is affected with the knowledge and bound by the acts of the agent; but this principle can have no application to a case in which the one party does not act as agent, but avowedly for himself, and adversarily to the interests of the other.   In the case now under consideration Winchester did not profess, and in fact did not represent, the company; it was represented in the transaction by the three directors with whom he dealt.   To hold a company responsible for all the acts of any of its officers, when they act confessedly in behalf of their own interests and in an adversary character, would be to sanction the grossest frauds.   The distinction which we state is plainly taken in the case relied on in argument.

The court there intended, and did nothing more than assert the general proposition, that an agent, *within the scope of his authority*, may bind his principal, but not to countenance the idea that an officer of a corporation may bind the latter in all cases whatever, especially not in a case where he professes to represent none other than himself, and to deal with the company as though he had no official relation to it.   4 *Paige,* 127, 129.   See *Story on Agency, sec.* 140, *(a and b.)*

From these observations it will appear we are of opinion, that the knowledge of George Winchester, unless it be shown to have been communicated to the company, is not sufficient to affect its rights.   Actual knowledge must be shown by proof, or at least such circumstances must be proved as would have been sufficient to put the company on the inquiry.

An extract of an act of the legislature of Pennsylvania of 1775, relating to the acknowledgment and recording of deeds, is set out in the record; and the property in controversy being within that State, the company rely upon that statute.

At the final hearing one of the questions for decision will be, necessarily, what is the influence of this statute on a case like the present?   The appellants claim under the same person as does the appellee; but insist, that their deed being older, although not recorded so soon as the deed of the latter, must have precedence on the ground of George Winchester having but an equity, because, as argued by them, the deed from the sheriff of York county was not recorded until after the execution of the instruments under which both appellants and appellee claim.

According to the provisions of the statute, all deeds made and executed in the then province concerning any lands, tenements or hereditaments, or whereby the same might be any way affected in *law* or *equity*, are directed to be recorded in the office for recording of deeds, in the county where the lands lie, within six months after their execution; and such deeds as may not be so recorded, are to be judged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance shall

be recorded as aforesaid, before the recording of the deed or conveyance under which such subsequent purchaser or mortgagee shall claim.

The deed under which the appellants claim bears date the 1st July 1831, and was not recorded until 1841. The mortgage is dated 9th April 1833, and was recorded 5th of July of the same year.

The statute of 1775 is the only one which has been given in evidence, but, it was argued at the bar, and the printed reports of judicial opinions pronounced in Pennsylvania were cited to show, that there are other acts in force in that State which relate to sheriffs' deeds. When such acts are legally proved, they possibly may establish that the sheriff's deed conveyed a *legal* title, without being recorded in what is known in that State as the record office. Of course we give no opinion on the effect of such acts, they not being *now* before us. If, however, it should appear from these statutes a *legal* title passed to George Winchester under the sheriff's deed, then the deed to the company, being first recorded, would prevail over that of the appellants, unless the allegation of the bill as to actual knowledge on the part of the company, or such circumstances can be made out as ought to have put it on the inquiry in regard to outstanding equities at the time the mortgage was executed.

It has been said that S. C. Leakin, who was a director of the company, because of his being concerned with G. Winchester in the original purchase, had notice Winchester was purchasing for his wife, and that this knowledge was notice to the company. We do not perceive how, necessarily, his interest in the purchase would give him notice of, or put him upon inquiry in regard to the rights of Mrs. Winchester, when the deed in fee for the whole property was taken in G. Winchester's name. The fact of buying for and conveying to Leakin, Glenn and Freeman, three-fourths of the property, did not of itself inform Leakin that the other fourth was for Mrs. Winchester. Three-fourths being bought for others,

did not give the least information that the other fourth was not purchased for himself.

The mortgage has been assailed in argument, as showing on its face that it was given for an antecedent debt, but the language of the instrument does not justify any such inference. It is precisely the same language which would be used if the money had been lent the day on which the mortgage was executed.

From these views it will appear, we are of opinion, that the appellants have stated a good case on the face of their bill, and that if it can be made out at the final hearing, they will be entitled to a decree in conformity with their prayer; but that the knowledge imputed to the company cannot be established from the fact that G. Winchester was, at the time of the execution of the mortgage, its president; nor from any knowledge on the part of S. C. Leakin, growing out of the circumstances *now* disclosed in the case. And, moreover, if the appellants be unable to make out knowledge on the part of the company, or the existence of such circumstances as ought to have put a reasonable person on the inquiry as to outstanding equities, the right of the company cannot be interfered with.

> *Order reversed and cause remanded for further*
> *proceedings under act of* 1832, *ch.* 302.