WICKERSHAM & KEITH v. CHICAGO ZINC COMPANY, *et al.*

1. KNOWLEDGE; *Corporation Agent's Knowledge, When Acting for Himself, is Not Knowledge of Corporation.* The general superintendent of a zinc and mining corporation conveyed to such corporation by a general warranty deed certain lands, to which W. & K. not being in possession, asserted some claim by virtue of a written lease from a prior vendor. Of this lease said superintendent had actual notice when he purchased the said premises in his own interest, and said lease was also recorded in the office of the register of deeds of the county where the land was situated, but was not acknowledged and certified as required by sections 9, 11 and 12, of the act regulating conveyances. *Held,* That said superintendent, having acted in the transaction, not for the corporation, but for himself, his knowledge of the lease to W. & K. is not the knowledge of the corporation, and cannot affect its rights, unless shown to have been communicated to it, or unless such facts had been presented to it to have put the corporation on inquiry.

2. CONSTRUCTIVE NOTICE; *Unauthorized Record, Does Not Impart Notice.* The provision of section 20 of the act relating to conveyances, to the

effect that the filing of written instruments with the register of deeds for record imparts notice to all parties and persons of the contents thereof, applies to such instruments only as are certified in the manner prescribed by law.

3. ESTOPPEL; *What Acts Will Constitute.* W. &. K. in November 1872 executed a written lease with one W., whereby they could mine coal on W.'s land for a term of twelve years, which term was to commence January 1st 1873. W. & K. were to pay W. (as rent for the land and right to mine coal) one-half cent for every bushel mined, to be paid monthly. The lease stipulated that W. & K. should have the right to commence mining coal at any time, and W. & K. agreed to do so as early as they could make the necessary preparations. W. & K. did nothing under the lease, but refused to answer W., who wrote them in the spring of 1873, asking what they intended to do as to mining coal on his premises, and W. in a few weeks thereafter sent a letter to the address of W. & K. canceling the lease. W. & K. thereafter took no other steps to mine coal on the premises, or to commence work therefor, but to make inquiry as to the costs of mining and loading coal at said premises on the cars, until June 1874, when they sent their agent with a laborer to mine, and to make demand for the premises if forbidden to work; and at this time said premises were owned and in the possession of a zinc and mining corporation under a purchase made in October 1873, which corporation, with the knowledge of W. & K., and without objection from them, or any assertion of W. & K.'s claim thereto, had expended $65,000 on the premises in the construction of extensive mining works. *Held,* That W. & K. were, by the terms of said lease, the notices of the lessor, and their own acts and conduct, estopped from asserting against said zinc and mining company any rights under the lease, or any possession to the premises, or any claim for damages.

*Error from Cherokee District Court.*

ACTION by *J. R. Wickersham* and *R. H. Keith,* against the *Chicago Zinc & Mining Company, J. A. C. Thompson,* and *W. A. Wilkinson.* Trial at the October Term 1875 of the district court, and judgment against plaintiffs and in favor of defendants for costs. Plaintiffs bring the case here for review. The facts stated in the opinion.

*McComas & McKeighan,* for plaintiffs, contended, that the zinc company, at the date of the delivery of the deed to them by Thompson, knew all about the lease to plaintiffs, as he was general superintendant of the zinc company. Notice

to officers and agents of corporation, is notice to corporation; Angell & Ames on Corp., §§ 305, 306; 16 Md. 456; 38 Mo. 228; 19 Vt. 410.

*Blair & Hill,* for defendants, maintained, that, while it is true in some instances and under certain circumstances, knowledge of a general officer of a company is knowledge of a company, yet it is equally true that his knowledge is not the knowledge of the company in a contract of sale between him and the company, where he is acting as a private individual, and where there is no community of interest between them; (Angell & Ames on Corp., §§ 308, 309; 15 Denio, 337.) Therefore the zinc company had no knowledge of the lease through Thompson's knowledge. Again: The company had no constructive knowledge by the record of the lease. Our statute of conveyance provides how instruments affecting real estate may be acknowledged, and how the acknowledgment shall be certified to entitle them to be recorded, and declare that when *so certified* and recorded they shall be notice to all the world.

The acknowledgment of the lease to plaintiffs, however, is not *so certified*, and the instrument was not entitled to be recorded. Hence, the record imparts notice to no one; and the defendant corporation had no actual or constructive notice of its existence, and therefore is not bound by its covenants. But even if the lease was valid and binding on all the defendants, the plaintiffs have no cause of action. This is a suit for damages, and the court says the plaintiffs have sustained none.

The opinion of the court was delivered by

HORTON, C. J.: On the 2d of November 1872, Wickersham & Keith made a contract and mining lease in writing with one Wm. A. Wilkinson, who then occupied and claimed

Statement of facts.

certain real estate under and by virtue of landcontracts made and entered into before that time between said Wilkinson and the Mo. River, Ft. Scott & Gulf

Railroad Co., whereby they had the right to mine coal on said land, and to erect such houses or shelters on the land as said W. & K. might deem necessary for the convenient prosecution of the work of mining. The contract or lease was for the term of twelve years, the term to begin on the 1st of January 1873, and also contained among other stipulations, the following:

"The parties of the second part shall have the right to commence mining said coal at any time, *and they agree to do so as early as they can make the necessary preparations;* and until they shall commence mining, the party of the first part reserves the right to mine coal on said land, but to desist when the parties of the second part shall commence mining. The parties of the second part agree to pay the party of the first part, as rent for said land, one-half cent for every bushel of coal they mine, to be paid monthly on the 15th of each month for the month previous.

"When the parties of the second part commence mining they agree to furnish the party of the first part all the coal he may need for his private use at the cost of mining same, and this sum is to be credited monthly upon the monthly payments of the parties of the second part for rent."

From the time of the signing of the lease, until in June 1874, Wilkins neither saw nor heard from W. & K., and W. & K. took no steps to mine the land until in said June 1874, when they sent an agent to the land, accompanied by a laborer with shovel and pick, to go to mining, and to make a demand for the premises provided they were forbidden to work. At this time, the Chicago Zinc & Mining Co. were in the possession of the premises, had their works in operation, and had expended in the construction of their works, etc., upon the premises the sum of $65,000. After the months of January and February 1873 had passed, and W. & K. had done nothing under the lease in the way of mining, or commencing work therefor, Wilkinson wrote to them at Kansas City, Mo., wanting to know what they were intending to do; and not getting any reply from them, or receiving any information, he, a few weeks thereafter, wrote them a second letter, declaring the contract forfeited. The first letter

from Wilkinson was received by W. & K., but not answered; the second letter they say they did not receive. W. & K. were coal merchants at Kansas City, Mo. In the month of June 1873, Wilkinson got his contracts with the railroad company embracing these premises renewed and extended, and in September of the same year sold the premises for a valuable consideration to one J. A. C. Thompson, and assigned the land-contracts with the railroad to him, and executed to him a general warranty deed, in which his wife joined. Thompson knew at the time of his purchase of the lease in question. On September 12th 1873, said Thompson received from the railroad company a general warranty deed to the said premises, and paid therefor the balance of the purchase-money, which Wilkinson yet had to pay. On September 11th 1873, Thompson made out a warranty deed from himself and wife to the Chicago Zinc & Mining Co. for the lands. At such time, the company was not fully organized, and the deed was not delivered until the 23d of October 1873. The zinc company completed its organization, so that a certificate of incorporation was issued to it on the 23d of September 1873. After such organization, Thompson turned over the land to the company for $10,000, and received paid-up certificates of stock for such amount. On September 15th 1873, said Thompson was chosen general superintendent of the corporation. After all of the above transactions, W. & K. filed their petition against the Chicago Zinc & Mining Co., and Thompson, and therein demanded damages for $15,000, and that the defendants be perpetually enjoined from mining and digging coal on the said premises, and from interfering with the rights of W. & K. On the trial a jury was waived, and the case tried to the court. Findings of fact were filed by the court, embodying among other things, all the above facts, and on all the findings of fact, the court held that W. & K. could not recover.

The court having found as a conclusion of fact, that the C. Z. & M. Co. had no actual knowledge of the lease of W. &

K. at the time of purchasing the land from Thompson, such finding is conclusive of the case, and fully sustains the judgment, unless, as the plaintiff in error contends, the company was bound by the knowledge of Thompson, its general superintendent, as to the lease, or unless the company is held to have had constructive notice of the lease through the record of the same in the office of the register of deeds. It is undoubtedly true as a general proposition, that the principal is charged with the knowledge and bound by the acts of the agent; but this general rule, like most other rules, has its exceptions and limitations. The general rule is based upon the principle, that, as it is the duty of the agent to act upon the notice for his principal, or to communicate the information to his principal in the proper discharge of his trust as such agent, notice to the agent is likewise legal notice to his principal. This rule applies to the agents and officers of corporations, as well as others. This general rule has no application however to a case in which the one party does not act as agent, but avowedly for himself, and adversely to the interests of the other. In other words, neither the acts nor knowledge of an officer of a corporation will bind it in a matter in which the officer acts for himself, and deals with the corporation as if he had no official relations with it. Angell & Ames on Cor., §§ 308, 309; *Winchester v. B. & S. Rld. Co.*, 4 Md. 231; *Fulton Bank v. N. Y. & S. C. Co.*, 4 Paige, 127; Story on Agency, § 140. In this case, Thompson bought the land for himself and one C. F. Russell; the deeds were taken to himself; and in the transfer and conveyance of the same to the company, he did not represent the company. He was acting in behalf of his own interests, and in an adversary character. His knowledge of the lease, under the circumstances, was not notice to the company of which he was an officer, unless it had been shown by proof to have been communicated to the company, or at least such facts had been established as would have been sufficient to have put the company on inquiry. In the contract or sale between Thompson and the company, he was act-

1. Knowledge; principal and agent.

ing as a private individual, and there was no community of interest between him and the company; therefore the company had no knowledge of the lease through Thompson's knowledge. With these views, it is unnecessary to comment upon the actual or constructive notice to Russell, and his relations with the corporation, as the conclusions we have reached, as to the knowledge of Thompson not being notice to the corporation, include all that could be said as to Russell.

We must also hold that the company had no constructive knowledge of the lease, by the record thereof. It is true, that it was filed for record April 14th 1873, in the office of the register of deeds of Cherokee county, and afterward recorded in that office. But it was not certified as required by sections 9, 10 and 11 of the General Statutes, page 186, and therefore did not impart notice to the company. In place of a proper acknowledgment of the lease, there is only the following:

2. Record; constructive notice.

"Subscribed to this 2d day of November 1871.
"E. A. PERRY, Notary Public. [SEAL.]"

Section 20, Gen. Stat. 187, prescribes that instruments, *certified* and recorded as provided for in the act regulating conveyances of real estate, shall be notice to all persons of the contents thereof. As the lease was not certified as the statute directs and requires, the record of the lease imparted notice to no one.

The judgment is sustainable again, upon another proposition. There was such an abandonment of the lease by W. & K., and such a cancellation thereof by Wilkinson, and such acts and conduct on the part of W. & K., that they were estopped from asserting any right to the premises against the Zinc and Mining company, or to any claim for damages against this corporation. If a contract specifies no time, the law implies that it shall be performed within a reasonable time. In this case, while the term of the lease was not to commence till January 1st 1873, it was specially provided that W. & K. should have the right to

3. Estoppel; acts of party.

commence mining coal at any time, and *they agreed so to do as early as they could make the necessary preparations,* and the said Wilkinson was to receive as rent for his land one-half cent for every bushel of coal mined, to be paid monthly. In view of all the conditions of the lease, it certainly must be apparent that the parties to the lease had in view in making the contract an early commencement of the mining of coal by W. & K. A long delay would have been injurious to Wilkinson, as in fact it actually was, because in the end, he became deprived of his property, owing to his inability to meet his payments to the railroad company, as he relied upon the payments on the lease to obtain funds to pay installments due on his land-contracts at the date of the lease, and for the nonpayment of which the railroad company had the right to forfeit his interest in the land. After waiting till the spring of 1873, and nothing having been done, Wilkinson properly wrote to W. & K., inquiring what they intended to do in the matter. They received the letter, and refused to answer. In a few weeks Wilkinson wrote them again, declaring the contract forfeited. Nothing being attempted to be done by W. & K. under the lease, the Zinc and Mining company in the fall of 1873 purchased the premises. When the company was commencing work, an agent of W. & K. visited the premises described in the lease to see what coal could be mined for, and delivered to the cars on the Gulf railroad. After examinations, he reported to W. & K. that it could not be mined and delivered for less than eight or nine cents per bushel, and at this time W. & K. were getting their coal delivered to them upon the same railroad from other mines at seven cents per bushel, and were able to fill all their orders they secured from the coal which they were obtaining from other mines. They watched the growth of the extensive mining works upon the land in question, and the consequent expenditure of large amounts of money, making no attempt to assert any claim, and giving no notice to the company of the existence of their lease. After sixty-five thousand dollars had been expended by the company

upon the land, to lay a foundation for a suit they sent (in June 1874) an agent, with one man with a shovel and pick, to go to mining, and make demand for the premises. They then sought to resuscitate their lease, made in November 1872 in anticipation of immediate work thereunder. They had no right so to do. In view of their conduct to Wilkinson, and to the Zinc and Mining company, they were too late in asserting any claim under the lease. It would be grossly inequitable to hold otherwise. The judgment was rightfully given. If the plaintiffs in error have been damaged in the premises, which is not apparent from the record, the result comes from their own *laches*, and for such acts innocent parties should not suffer.

The judgment will be affirmed.

All the Justices concurring.