## LINDSEY, Assignee, etc., v. THE LAMBERT BUILDING & LOAN ASSOCIATION.

*(District Court, W. D. Pennsylvania. October 8, 1880.)*

1. BUILDING ASSOCIATION—TITLE TO BANK DEPOSIT.—C., the treasurer of a building and loan association, a corporation, who had received over $6,000 of the moneys of the association, opened an account in bank in his name as treasurer of the association, and in that name and title deposited $6,000, taking therefor a certificate of deposit, payable him as such treasurer. *Held,* that the money so deposited became *eo instanti* the property of the corporation, and no subsequent act of ratification on its part was necessary to complete its title to the fund.

2. SAME—BANKRUPTCY—PREFERENCE.—At the time of the deposit C. was in good financial credit, but, in fact, was insolvent, and upon a creditor's petition, filed within 60 days thereafter, was adjudged a bankrupt. The deposit was the voluntary and unsolicited act of C., and at that time no member of the association or officer (other than C. himself) knew of or had any reason to suspect C.'s insolvency or intention to give a preference to the corporation. The corporation had not authorized C. to use its funds or commingle them with his own, and had no knowledge of any such breach of duty on his part. *Held,* that the corporation was not chargeable with C.'s knowledge of his insolvency and intention to give a fraudulent preference.

3. SAME—SAME—SAME.—The corporation, not otherwise having any cause to believe C. to be insolvent, or knowledge that the deposit was made in fraud of the bankrupt act, *held,* that the assignee in bankruptcy could not impeach the deposit as an unlawful preference.

The facts of this case appear in the following charge of the court to the jury.

*D. T. Watson* and *Knox & Reed,* for new trial.

*T. C. Lazear, contra.*

ACHESON, D. J., *(charging jury.)* In order to invalidate, as a fraudulent preference under the bankrupt law, a payment made or security given for a debt, it is not enough to show that the debtor was insolvent at the time of the payment or transfer, and that the same was made by him with a view to give a preference to the creditor; but it must also appear that the creditor at the time had such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, and knew that the payment or transfer was made in fraud of the law. It

has been held by the supreme court of the United States (*Grant* v. *The Nat. Bank,* 97 U. S. 80) that it is not sufficient that the creditor may have had some cause to suspect the insolvency of his debtor. The court, in that case, say: "Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside."

In the present case, under all the evidence, the material facts are not the subject of dispute. William F. Casey, for several years prior to August 13, 1875, had been the treasurer of the defendant corporation, the Lambert Building & Loan Association, receiving and disbursing from time to time its funds. Prior to the date mentioned he had never kept any separate bank account of the funds of the association. He kept individual bank accounts in the Anchor Savings Bank and the City Savings Bank. On the date mentioned (August 13, 1875) he had in his hands of the moneys of the association an amount slightly exceeding $6,000. On said date he went to the Bank of Pittsburgh and opened an account in the name of W. F. Casey, treasurer of the Lambert Building & Loan Association, and deposited in that name and title $6,000, and took a certificate of deposit for the same to "W. F. Casey, treasurer of Lambert Building & Loan Association." He was at this time in good financial credit, and no member or officer of the association (except himself) had any knowledge whatever of his insolvency, or had any reason to believe or suspect him to be insolvent. He was in fact then insolvent, as the sequel showed, but this was known only to himself. The next day, August 14, 1875, Casey went to the office of S. A. Johnson, Esq., the solicitor of the association and its secretary, asked him what was the balance appearing against him on the books, and stated that he wished to pay it over, and resign his office of treasurer. Johnson asked him why he did this? To which he replied he would tell him again. Mr. Johnson having informed him of the exact balance due the association, Casey indorsed said certificate of deposit as follows:

v.4,no.1—4

"Pay to the order of Wm. J. Flynn and S. A. Johnson, president and secretary of the Lambert Building & Loan Association. W. F. CASEY,

"Treasurer of Lambert Building & Loan Association.

"*Aug. 14, 1875.*"

—and delivered the certificate so indorsed to Johnson. He also paid the latter a small sum of money, in full of the balance due by him as treasurer, and took Mr. Johnson's receipt in full. At the same time Johnson drew up, and Casey signed and handed Johnson, his resignation of the office of treasurer of the association. Down to the close of this transaction it does not appear that Johnson, or any member or officer of the association, except Casey himself, had any knowledge or information whatever of Casey's insolvency. But later, on the same day, (whether before Casey left Johnson's office, or at a second visit, does not clearly appear,) he informed Johnson that he was in pecuniary difficulties.

The money deposited in the Bank of Pittsburgh was not drawn from that bank until August 18, 1875, when it was drawn by S. A. Johnson, secretary, and George F. Ewens, vice-president, of the association, both of whom then knew of Casey's insolvency. The latter executed a deed of voluntary assignment, for the benefit of his creditors, on August 19, 1875. On the twelfth of October, 1875, certain of his creditors filed a petition against him for his adjudication as a bankrupt, and he was subsequently so adjudicated.

The present action is by his assignee in bankruptcy to recover the $6,000 deposited as already mentioned in the Bank of Pittsburgh. The right of the plaintiff to recover depends, I think, upon the determination of the question, when did the title to the fund in controversy vest in the Lambert Building & Loan Association? I am of opinion that it so vested at the time of the deposit on August 13, 1875.

It is argued that some affirmative act of ratification on the part of the association was necessary before the title to the fund vested in the association, and that no such act has been

shown until the money was drawn out of bank by the vice-president and secretary, both of whom then had knowledge of Casey's insolvency, and that ratification was then too late. But I cannot adopt this view. In opening the account at the Bank of Pittsburgh and making the deposit for the benefit of the association, Casey merely performed a duty he owed the association. He should, from the first, have kept the moneys of the association separate and apart from his own. The Bank of Pittsburgh was a safe and proper place of deposit for the money of the association. Had he died immediately after the deposit it would hardly be pretended that the fund so deposited would have passed to his personal representative.

I affirm the defendant's third point, viz.: "that, under all the evidence in the case, the verdict should be for the defendant."

Under the undisputed facts, and for the reasons already stated, I refuse the plaintiff's several points.

---

The jury having found a verdict for the defendant, the plaintiff moved the court for a new trial, which after argument was refused, the court filing the following opinion, October 8, 1880:

ACHESON, D. J. I adhere to the opinion I entertained at the trial, that when W. F. Casey deposited the $6,000 in the Bank of Pittsburgh to his credit, as treasurer of the Lambert Building & Loan Association, taking the certificate of deposit payable to his order as such treasurer, the money became *eo instanti* the property of the defendant corporation. Confirmatory of this view is the case of *Stapleton* v. *Stapleton*, 14 Simons, (Eng. Ch. R.) 186. It must be remembered that Casey was the mere custodian of the moneys of the association, and at all times should have kept the trust fund distinguishable from his own moneys and separate therefrom. Hence, when he made the deposit in the Bank of Pittsburgh, he merely restored to the trust fund its ear-mark, which it had temporarily lost by reason of his unauthorized act in mixing the trust moneys with his private funds. To use the language

of the lord chancellor, in *Ex parte Sayers*, 5 Ves. 169, 172, "if the money got into the general fund, it got out again." It seems to me, therefore, that the title to the deposited fund vested immediately in the association, and no act of ratification on its part was necessary to complete the transaction.

It is, however, urged with great earnestness that if the foregoing view is correct the deposit in question was an unlawful and void preference. But to avoid a preference as fraudulent under the late bankrupt law, it must appear that the party receiving it, or to be benefited thereby, had at the time reasonable cause to believe that the debtor was insolvent, and knew that the payment or security was made or given in fraud of the act. In *Clark* v. *Iselin*, 21 Wall. 360, 375, after stating what must concur in order to avoid a preference, Judge Strong says: "In fine, there must be guilty collusion to constitute the fraudulent preference condemned by the statute." That case arose under the thirty-fifth section of the original act, but the amendment of June 22, 1874, went further to uphold preferences than did the original act. "Having reasonable cause to believe that such person is insolvent, and *knowing* that such * * * payment, pledge, assignment, or conveyance is made in fraud of the provisions" of the act, is the language of the amendment. Reasonable cause to believe that insolvency exists, and knowledge of a fraudulent intent to give a preference, must both be shown. Now, if under the original act it was necessary to show "guilty collusion" in order to set aside a preference, much more is it necessary under the amended act. But where is there any evidence tending to show "guilty collusion" between W. F. Casey and the Lambert Building & Loan Association? Throughout this whole transaction the good faith of the association is conspicuous. As already observed, Casey was the mere custodian of the moneys of the association. It was not intended that the relation between him and the corporation should be that of debtor and creditor. The association did not contemplate that Casey should use the trust funds or commingle them with his own, and at the time the deposit was made had no actual knowledge that he had violated his

duty in the premises. Moreover, at that time no member or officer of the association, other than Casey himself, had any suspicion of the latter's insolvency, or knew of his intent to give a preference to the corporation. It is quite certain that if the relation between Casey and the association had been simply that of debtor and creditor, the payment by him to the corporation of this money, under the circumstances disclosed by the evidence, could not have been impeached as an unlawful preference.

But it is contended that inasmuch as Casey was treasurer of the corporation his knowledge of his insolvency and intention to give a fraudulent preference was the knowledge of the corporation. Upon what principle, however, is the association chargeable with knowledge of Casey's insolvency? What interest had the corporation in his private affairs? He being the mere custodian of the moneys of the association, how did it concern the latter whether he was solvent or insolvent? Furthermore, Casey's knowledge of his insolvency was not acquired by him while acting in his capacity of treasurer; nor was he bound to communicate the fact to the corporation. But if the information was not acquired by him in the course of his duties as treasurer, and he was under no obligation to communicate it to the corporation, then the latter is not chargeable with constructive notice of his insolvency. *Philadelphia* v. *Lockhardt,* 73 Pa. St. 211; Wharton on Agency, § 178.

Undoubtedly the general rule is that notice to, or knowledge acquired by, an agent in the course of the transaction in which he represents his principal binds the latter. Therefore, where a creditor secured a preference from an insolvent debtor through the intervention and by the solicitation of an agent, the knowledge of such agent was held to be the knowledge of his principal. *West Phil.delphia Bank* v. *Dickson,* 95 U. S. 180, 181. But in the present case, in making the deposit in the Bank of Pittsburgh, Casey was acting for himself and not as agent for the corporation. The latter was not seeking any preference. The association had not solicited the deposit. It was the voluntary act of Casey. The motive

which induced him to take this step, it may well be supposed, was altogether a personal one, viz.: his desire to escape the criminal consequences of the embezzlement of trust funds.

It is a well-recognized rule that neither the acts nor knowledge of the officer of a corporation will bind it in a matter in which he acts for himself and deals with the corporation as if he had no official relations to it. Angell & Ames on Corp. § 308; *Winchester* v. *Balt. & S. R. Co.* 4 Md. 231; *Commercial Bank* v. *Cunningham,* 24 Pick. 270; *Stevenson* v. *Bay City,* 26 Mich. 44; *First Nat. Bank of Hightstown* v. *Christopher,* 40 N. J. (Law) 435; *Barnes* v. *The Trenton Gas-light Co.* 12 C. E. Green (N. J. Eq.) 33. Thus, where the general superintendent of a corporation conveyed land to it, the corporation, it was held, was not chargeable with his knowledge of an adverse claim to the land. *Wickersham* v. *Chicago Zinc Co.* 18 Kan. 481. The corporation agent's knowledge, when acting for himself, is not the knowledge of the corporation. Id. I hold the present case to fall within this principle.

If my agent, who had fallen in arrears in his accounts, had voluntarily made me a payment during the life-time of the bankrupt law, would any one pretend that I could be deprived of the benefit of such payment upon the ground of constructive notice of his insolvency and intent unlawfully to prefer me, if in fact I were ignorant thereof and free from guilty collusion with such agent? And why should the defendant corporation, upon the ground of imputed knowledge, be compelled to surrender a preference which it acquired innocently, and without actual knowledge of any intended fraud upon the bankrupt law? Having obtained the fund in controversy honestly, the defendant can in good faith retain it.

The motion for a new trial is denied; and it is ordered that judgment for the defendant be entered upon the verdict.