[Department One.—May 8, 1883.]

## BANK OF SONOMA COUNTY, RESPONDENT, v. A. J. GOVE, APPELLANT.

PROMISSORY NOTE—TRANSFER—EQUITIES.—If a promissory note is transferred after maturity by an indorser who took it before maturity, and was not himself affected by any equities between the original parties, the holder acquires it relieved of such equities, and they are not available against him. (McKINSTRY, J., and Ross, J.)

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of MR. JUSTICE MC-KINSTRY.

*C. V. Grey*, for Appellant, cited Civil Code, § 3123; Code Civ. Proc. § 368; *Vinton* v. *Crowe*, 4 Cal. 309; *Hayward* v. *Stearns*, 39 Cal. 58; *Hart* v. *Cooper*, 47 Cal. 77; *Brown* v. *Witts*, 57 Cal. 304; *Fuller* v. *Hutchings*, 10 Cal. 523; *Baxter* v. *Little*, 6 Met. 7.

*A. W. Thompson*, for Respondent, cited Code Civ. Proc. § 383; 1 Daniels on Negotiable Instruments, §§ 724, 726, 786, 803, and authorities there referred to.

McKINSTRY, J.—The appellant Gove made his promissory note for eight hundred dollars to defendant Stuart, who indorsed it before maturity to the National Gold Bank and Trust Company. The bank discounted the note in the regular course of its business. After maturity, the bank for a valuable consideration transferred the note to E. W. Steele. Subsequently Gove, the maker, paid to Steele one half the sum then due upon the note, claiming that as between himself and Stuart the instrument was an accommodation, and each was liable to the other for one half only. Steele refused to recognize the alleged claim, but consented to receive the sum paid as a partial payment, and such sum was indorsed as a payment in the usual manner. Afterwards Steele transferred the same for value to the plaintiff.

As between themselves there was an agreement between Gove and Stuart that each should pay one half the note, but of this

neither the National Bank, Steele, nor the plaintiff had notice when they respectively bought the note.

This action was commenced August. 30, 1877. Defendant Stuart was discharged from his debts under the insolvent laws June 27, 1879, and judgment went for him in the court below. That court gave judgment in favor of the plaintiff for the balance due against the appellant Gove.

Upon this state of facts it is contended by appellant the judgment should be reversed, because plaintiff was chargeable with notice that the note was an accommodation note, and that the maker had paid all he was liable to pay to Steele. Appellant relies upon the proposition laid down in *Vinton* v. *Crowe*, 4 Cal. 309, and approved in *Hayward* v. *Stearns*, 39 Cal. 58. In the first of these cases the proposition is thus stated: "A negotiable note, taken by the holder after its maturity, is taken subject to all subsisting equities between the maker and payee, but not such as subsisted between the maker and any intermediate holder."

The facts in *Vinton* v. *Crowe* are not reported, but in *Hayward* v. *Stearns* the defense relied upon the fact that while the note remained in the hands of Turner, who took after it was *overdue*, the latter became indebted to the maker in a sum greater than the amount of the note. There can be no doubt the law was properly applied in that case, and it must be supposed that the facts in *Vinton* v. *Crowe* were analogous. At all events, the general language employed by the court is not to be interpreted as establishing that every indorsee who takes a negotiable instrument after maturity is bound by the equities' subsisting between the payor and payee; if, indeed, the fact that, as in the case before us, the note was made for the mutual accommodation of the original parties can be considered as an equity within the meaning of the rule.

"It is a settled principle that if the party who transferred the instrument to the holder acquired the note before maturity, and was himself unaffected by any infirmity in it, the holder acquires as good a title as he held, although it were overdue and dishonored at the time of the transfer." (Daniel on Negotiable Instruments, § 726, citing many American cases; Chitty on Bills, 13th Am. Ed. 250; 9 Ex. 690.)

Here the note was discounted by the National Bank before it became due, without notice of the agreement between the original parties.

In England it is well established that the general rule, that the purchaser of overdue paper can stand in no better position than his transferrer, does not apply so far as to invalidate bills and notes drawn, indorsed, or accepted for accommodation, overdue at the time they are negotiated or transferred, it being considered that parties to accommodation paper hold themselves out to the public by their signatures, to be bound to every person who shall take the same for value, the same as if it were paid to themselves. And the fact that the purchaser knew that the paper was so drawn, indorsed, or accepted for accommodation, does not weaken his position. (9 Ex. 690.) But inasmuch as the decisions in the United States do not uniformly follow the English rule, and as the facts of the case at bar do not demand a decision of the question, we express no opinion with respect to this last point.

Judgment and order affirmed.

Ross, J., concurred. McKee, J., concurred in the judgment.