GUSTAVE KOEHLER, APPELLANT, V. F. C. DODGE ET AL., APPELLEES.

[FILED FEBRUARY 3, 1891.]

1. **Usury:** PAROL AGREEMENT CONTEMPORARY WITH NOTE. Where a person borrows money and gives his note therefor, which specifies on its face a lawful rate of interest, a verbal promise of the borrower made at the time the note is given, to pay a rate of interest in excess of that allowed by law, will not itself make the transaction usurious.

2. ———: ———. In such case, if the verbal agreement is carried into effect at the time the loan is made or subsequently thereto, by the borrower paying the unlawful interest, or if the lender in pursuance of the agreement has by any shift or device reserved or received interest in excess of the legal rate, the transaction will be tainted with the vice of usury.

3. ———: CASE STATED. The defendants executed and delivered their four promissory notes for a loan of money, which by their terms

Koehler v. Dodge.

bore interest at the rate of ten per cent from date.  At the time the loan was made the defendants verbally agreed to pay for the use of the money interest at the rate of eighteen per cent per annum.  The notes were extended from time to time, after due, the defendants paying interest thereon from date at eighteen per cent.  Finally the notes were renewed by taking the notes in suit, but no credit was given for the interest that had been paid in excess of the legal rate.  *Held*, That the renewal notes were subject to the plea of usury.

4. **Corporations:** OFFICERS: NOTICE.  A corporation is not chargeable with the knowledge nor bound by the acts of one of its officers in a matter in which he acts in behalf of his own interests, and deals with the corporation as a private individual, and in no way represents it in the transaction.

5. **Negotiable Instruments:** MATURITY: BONA FIDE PUR-CHASER.  When a negotiable note is purchased after maturity from an innocent holder for value, the purchaser takes it free from all equities and defenses that existed between the original parties to the paper.

6. ———: ———: AN EXCEPTION to the rule is where the payee becomes such purchaser.  He is not within the protection of the rule applicable to innocent holders.

7. ———: PLEDGE.  If a negotiable note is indorsed and transferred before due, as collateral sucurity for a loan of money then made, the pledgee, who receives the paper without notice of any defense, is a holder for value in the usual course of business.

APPEAL from the district court for Hall county.  Heard below before TIFFANY, J., and HARRISON, J.

*O. A. Abbott,* for appellant:

The parol agreement did not taint the original notes with usury. (*Butterfield v. Kidder,* 25 Mass., 512; *Allen v. Turnham,* 3 So. Rep., 854; *Richards v. Kountze,* 4 Neb., 206; *Dell v. Oppenheimer,* 9 Id., 454; *Bank v. Wagner,* 9 Pet. [U. S.], 378; *Bushby v. Finn,* 1 O. St., 410; *Hotel Co. v. Wade,* 7 Otto [U. S.], 13.  Knowledge of an officer of a corporation is not notice to the latter, unless acquired in the prosecution of its business. (*Wickersham v. Zinc Co.,* 18 Kan., 481; *Atl. State Bank v. Savery,* 82 N.

Y., 291; *Washington Bank v. Lewis*, 22 Pick. [Mass.], 24; *Fulton Bank v. Canal Co.*, 4 Paige Ch. [N. Y.], 127.

*Thummel & Platt, contra:*

To enforce the usury penalty against a purchaser, it is not necessary to prove that he had full and certain knowledge of the defense. (*Cone v. Baldwin*, 12 Pick. [Mass.], 545; *Goddard v. Lyman*, 14 Id., 268; *Packwood v. Gridey*, 39 Ill., 388; Wade, Notice, 44; *Haescig v. Brown*, 34 Mich., 503; *Bank v. Scott*, 10 Neb., 86; *Olmsted v. Security Co.*, 11 Id., 492; *Cheney v. Cooper*, 14 Id., 416; *Evans v. De Roe*, 15 Id., 631; *Nelson v. Hurford*, 11 Id., 465; *Knox v. Williams*, 39 N. E. Rep., 786; *Lincoln Natl. Bank v. Davis*, 25 Neb., 377.) A director acting as in this case comes fully under the rule of notice. (*Smith v. Livingston*, 111 Mass., 342; *Lincoln Natl. Bank v. Davis*, 25 Neb., 377; *Suit v. Woodhall*, 113 Mass., 391; *Bank of U. S. v. Davis*, 2 Hill [N. Y.], 451.)

NORVAL, J.

This suit was brought by the appellant in the district court of Hall county to foreclose a chattel mortgage given to secure two promissory notes, each in the sum of $8,310.45, bearing date October 29, 1884, and drawing ten per cent from date. The notes were executed by Freeman C. Dodge, and were payable to William A. Hagge, the cashier of the State Central Bank of Grand Island, for the use and benefit of that bank.

It is alleged by the plaintiff that the defendants, at the time of the execution of the notes and mortgage, were partners doing business under the style and firm name of F. C. Dodge; that the notes and mortgage were given for the use and benefit of said firm, and that the plaintiff is an innocent holder for value.

The defendants contend that the notes were given in

renewal of four other notes given to the State Central Bank, which were tainted with the vice of usury, and that the plaintiff purchased the notes in suit after maturity and was chargeable with notice of the consideration for which they were given.

The district court court made the following findings of facts:

"First—That the defendants Freeman C. Dodge and Edmund B. Abbott were partners doing business under the style and firm name of F. C. Dodge, as alleged in plaintiff's petition, and that the notes and mortgage sued on were made by the defendant Freeman C. Dodge for the use and benefit of said firm.

"Second—The court further find that the plaintiff, Gustave Koehler, was at the time of the commencement of this suit the lawful owner and holder of said notes and entitled to a beneficial interest in said mortgage; that default has been made in the condition of said mortgage, and that the plaintiff is entitled to an order of sale of the mortgaged property.

"Third—And the court do further find that the notes described in said mortgage were executed and delivered to said William A. Hagge for the use and benefit of the State Central Bank of Nebraska, of which bank he was, at the date of said notes, cashier.

"Fourth—The court do further find that one of the notes described in said mortgage and marked 'Ex. A,' was, on the 5th day of February, A. D. 1885, sold, indorsed, assigned, transferred, and delivered to the United States National Bank of Omaha, Nebraska, as collateral security for a loan made to the State Central Bank of Nebraska, or to William A. Hagge and Henry A. Koenig, who were then the sole owners of the stock in the State Central Bank. That the assignment, transfer, sale, and delivery was made before the maturity of said note, and without any knowledge or notice to said United States

National Bank of any defense thereto, and was received by the said United States National Bank of Omaha, Nebraska, as collateral security as aforesaid in the ordinary course of its business, and for value; that prior to the purchase of 'Ex. A' by the plaintiff herein, it had been returned to the Citizens National Bank, or Koenig and Hagge.

"Fifth—The court do further find that the other note described in said mortgage, and marked 'Ex. B,' was by the State Central Bank of Nebraska sold, assigned, indorsed, transferred, and delivered to the Citizens National Bank of Grand Island, Nebraska, in the ordinary course of the business of said State Central Bank of Nebraska, and that the Citizens National Bank of Grand Island, Nebraska, purchased the same on the 16th day of December, 1884, and before the maturity thereof, but with notice of the equities of the defendant.

"Sixth—The court do further find that Henry A. Koenig was president of the State Central Bank of Nebraska, at the time said notes and each of them were made. That William A. Hagge was its cashier at the same time, and the court do further find that said Henry A. Koenig was, upon the organization of the Citizens National Bank of Grand Island, Nebraska, duly elected president thereof, and that said William A. Hagge was duly elected vice president thereof; that they have held said offices respectively since the organization of said last named bank. That they, and each of them, at the time of the transfer of the note marked 'Exhibit B' had full knowledge of the consideration for which said note 'Exhibit B,' was given. That said knowledge was acquired by them while employed as president and cashier of the said State Central Bank of Nebraska.

"Seventh—The court do further find that said notes and each of them were purchased by the said plaintiff, after the maturity thereof, and that he paid therefor a valuable

consideration and their full market value, and that he purchased or obtained 'Exhibit B' from the Citizens National Bank of Grand Island, Nebraska, and 'Exhibit A' from the Citizens National Bank, or of Henry A. Koenig and William A. Hagge.

"Eighth—And the court do further find that at the time of the purchase thereof he was chargeable with full notice of the consideration for which said notes and each of them were given.

"Ninth—The court do further find that the said notes 'Exhibits A and B' referred to in said mortgage, and each of them, were given in renewal of four several promissory notes described as follows, to-wit: Three notes dated September 21, 1881, one for $3,000 due in thirty (30) days, one for $3,000 due in sixty (60) days, and one for $6,000 due in ninety (90) days thereafter, which said three several notes each bore interest upon their face at the rate of ten per centum per annum, payable monthly until paid, and each of said three notes were known and numbered as 5088, 5089, 5090, and one other note dated February 7, 1882, for $6,000, which said last mentioned note was No. 5351, and was payable on demand with interest from date at the rate of ten per centum per annum, on which last mentioned note there was paid on the 24th day of June, 1882, the sum of $4,000, as principal.

"Tenth—The court do further find that at the time of the execution and delivery of the said four notes above referred to as Nos. 5088, 5089, 5090, and 5351 there was a mutual understanding and agreement between the defendants and the State Central Bank of Nebraska, to which said notes were payable, that the defendants should pay interest thereon from the date thereof at the rate of eighteen per centum per annum, instead of ten per centum per annum, as expressed on the face of said notes.

"Eleventh—The court do further find that the defendants, after the execution and delivery of said four notes

last above mentioned, paid interest thereon at the rate of eighteen per centum per annum on the amount due thereon from the date of said notes respectively up to the 21st day of January, 1883, and the court finds the amount of said payments so made at the rate of eighteen per centum per annum to be the sum of $3,498.

"Twelfth—The court do further find that the notes described in the mortgage and marked Exhibits A and B were given in renewal of the notes numbered 5088, 5089, 5090, and 5351, with interest thereon at the rate of ten per centum per annum from the 21st day of June, 1883, up to the 29th day of October, 1884, the day of the date thereof, and that by mistake of the parties drawing said notes and mortgage the same were made for a larger amount than the unpaid principal of said four notes, with interest thereon, the amount of such error being the sum of $140.90."

A decree of foreclosure was entered for the sum of $10,502, and the costs of suit were taxed against the plaintiff. The case is brought here by the plaintiff on appeal.

It appears from the tenth finding that at the time of the making of the four notes which were renewed by the notes in suit it was agreed between the defendants and the payee that the makers should pay interest thereon from their date at the rate of eighteen per cent, instead of ten per cent as expressed on their face. It is argued by counsel that the parol contemporaneous agreement to pay a usurious rate of interest did not taint the notes with usury. It is doubtless true that when a person borrows money and gives his note therefor, specifying a lawful rate of interest, a verbal promise of the borrower made at the time the indebtedness is incurred to pay an unlawful rate of interest for the use of the money would not of itself make the transaction usurious. (*Butterfield v. Kidder*, 8 Pick., 512; *Allen v. Turnham*, 3 Southern Rep., 854; *Van Beil v. Fordney*, 79 Ala., 76; *U. S. Bank v. Waggener*, 9 Peters,

379, 400.)   But where the verbal agreement is carried into effect by the borrower, at the time of making the loan or subsequently thereto, paying the unlawful interest, or where it appears that the lender, in pursuance of the agreement, has by any shift or device reserved or secured a rate of interest in excess of that allowed by law, it will make the transaction usurious, notwithstanding the note given for the repayment of the money borrowed should on its face express a legal rate of interest.   Parol evidence is admissible to show the usurious consideration of a note.

In the case at bar the evidence shows, although the trial court did not so find, that when the four original notes were given, eight per cent interest from their date until maturity was paid in advance, and the notes by their terms bore ten per cent interest from their date.   This made the contract illegal.

It is also established by the undisputed testimony, and the court in its eleventh finding so found, that the defendants, after the delivery of these four notes, paid interest thereon at the rate of eighteen per cent per annum from their date until January 21, 1883, amounting to $3,498.   When the renewal notes were taken, no credit was given for the interest that had been paid in excess of the legal rate.   This made the notes in suit usurious. Does the plaintiff hold the notes free from the defense of usury?   The court in the eighth finding of fact finds that the plaintiff purchased them with notice of the consideration for which they were given.   It is claimed that this finding is not supported by the evidence.   Both notes are negotiable in form.   It is conceded that they were purchased by the plaintiff in good faith after maturity, paying therefor their full market value.   But it is contended that he purchased from innocent holders, and is therefore protected.   Both notes involved in this case were made payable to W. A. Hagge, and were delivered to him for the use and benefit of the State Central Bank of Grand

Island. H. A. Koenig and said Hagge were at that time
the sole owners of the bank, the former being president
and the latter cashier. Subsequently the State Central
Bank ceased to transact a banking business, and about the
same time the Citizens National Bank was organized.
Koenig and Hagge have been stockholders in and directors
of the last named bank ever since its incorporation, and
have respectively held the positions of president and vice
president. One of the notes in controversy, Exhibit B,
was sold and indorsed by the State Central Bank to the
Citizens National Bank for value in the usual course of
business before maturity. But the trial court finds that the
Citizens National Bank was not an innocent purchaser, but
was chargeable with knowledge of the consideration of the
note acquired by Koenig and Hagge while acting as presi-
dent and cashier of the State Central Bank. The evidence
shows that they acted for themselves and not for the Citi-
zens National Bank in negotiating the note. The bank in
making the purchase was represented by its cashier, D. H.
Vieths, who had no notice of any infirmities of the paper.
Koenig and Hagge acquired knowledge of the considera-
tion of the note long before the organization of the bank,
in the prosecution of their individual business. Knowl-
edge thus acquired did not bind the bank in a transaction
where they deal with the corporation as private individuals
unless the knowledge was previously communicated to the
bank. They were acting solely for themselves. It would
be unreasonable to expect that they would communicate to
the corporation the fact that there existed a defense against
the note, and it will not be presumed that they did so
We are of the opinion that the Citizens National Bank
was an innocent holder of the note. (Angel & Ames on
Corp., secs. 308, 309; *Barnes v. Trenton Gas Light Co.*,
27 N. J. Eq., 33; *First Natl. Bank v. Christopher*, 40 N.
J. L., 435; *Custer v. Tompkins County Bank*, 9 Pa. St.,
27; *Winchester v. Baltimore R. Co.*, 4 Md., 231; *U. S. Ins.*

*Co. v. Shriver*, 3 Md. Ch., 381; *Wickersham v. Chicago Zinc Co.*, 18 Kan., 481; *La Farge Ins. Co. v. Bell*, 22 Barb., 54; *Washington Bank v. Lewis*, 22 Pick., 24.)

The case last cited was an action upon a promissory note made by Lewis. The defendant made and delivered the note to Thompson, one of the directors of the plaintiff, to procure the bank to discount it for the maker. Instead of doing that Thompson pledged it to the plaintiff for a loan made to himself. Lewis received nothing upon the note. It was held that the bank was not bound by the fraudulent conduct of Thompson and that as he did not act in his capacity as director in the transaction, his knowledge of the circumstances under which the note was procured was not the knowledge of the bank and did not affect its rights.

Notwithstanding the plaintiff purchased the note from the bank after maturity he holds it free from any and all defenses available to the makers against the payee, for it has become the settled law of this country that where a negotiable note is purchased after due from an innocent holder, the purchaser takes the title of and is entitled to the same protection as his indorser. (*Bassett v. Avery*, 15 O. St., 299; *Simon v. Merritt*, 33 Ia., 537; *Riley v. Schawacker*, 50 Ind., 592; *Kinney v. Kruse*, 28 Wis., 183; *Hogan v. Moore*, 48 Ga., 156; *Peabody v. Rees*, 18 Ia., 571; *Bank v. Gove*, 63 Cal., 355.)

An exception to the rule is where the original payee purchases from an innocent holder. (*Kost v. Bender*, 25 Mich., 515.)

An unsuccessful attempt was made by the defendants on the trial in the district court to show that the Citizens National Bank was but a reorganization of the State Central Bank; that the former succeeded to the properties and credits of the latter, and that Exhibit B was obtained by the first named bank in that manner and not by purchase in the usual course of business. The evidence shows that

22

the Citizens National Bank counted among its numerous stockholders Koenig and Hagge, the sole stockholders of the State Central Bank, but the new bank did not succeed to any of the assets or credits belonging to the old, so far as the evidence discloses, except this one note.

It appears from the findings of the court that the other note, Exhibit A, was sold, indorsed, and transferred by the payee before maturity to the United States National Bank as collateral security for a loan made by it to the payee, without any knowledge or notice on the part of the bank of there being any defense thereto.

The decided cases establish the rule that where a negotiable promissory note is indorsed and transferred before due as collateral security for a loan of money then made, the pledgee who takes the paper without notice of any defense is a holder for value in the usual course of business. Had the United States National Bank brought suit upon the note a plea of usury would have been of no avail to the makers. (Colebrook on Collateral Securities, 5 ; *Miller v. Pollock*, 99 Pa. St., 202; *Trustees of Iowa College v. Hill*, 12 Ia., 462; *Ruddick v. Lloyd*, 15 Id., 441; *Stotts v. Byers*, 17 Id., 303 ; *State Savings Ass'n v. Hunt*, 17 Kan., 532; *R. Co. v. Bank*, 102 U. S., 14; *Hunt v. Nevers*, 15 Pick., 500; *Logan v. Smith*, 62 Mo., 455; *Duncomb v. R. Co.*, 84 N. Y., 190; *Farwell v. Bank*, 90 N. Y., 483; *Roxborough v. Messick*, 6 O. St., 448; *Tarbell v. Sturtevant*, 26 Vt., 513; *Bond v. Wiltse*, 12 Wis., 611; *Lyon v. Ewings*, 17 Id., 61 ; *Curtis v. Mohr*, 18 Id., 615.)

The plaintiff claims that he purchased the note from the United States National Bank, and that the finding of the trial court, that it had been returned to the Citizens National Bank of Grand Island, or Koenig and Hagge, and by them sold to the plaintiff, is not supported by the evidence. The testimony shows that it was returned to Koenig and Hagge by the United States National Bank before the plaintiff obtained it. The money was paid by Koehler to

Koenig for the note and the testimony fails to show that it was ever sent to or received by the United States National Bank. Nor does it appear that prior to July 16, 1886, the date of plaintiff's purchase, the loan made by that bank, for which Exhibit A was pledged as security, had not been fully paid. It seems to have been liquidated, but at what time the record does not speak. The plaintiff and Koenig in their testimony say that Koenig acted as agent for Koehler in purchasing the notes, but they failed to state any facts that established the relation of principal and agent. They only state conclusions. No explanations is given why Koenig would act as agent for another in the purchase of a note in which he presumably had an interest. The note bears the indorsement of the United States National Bank to plaintiff, but the record is silent as to when the indorsement was made. We are convinced that there is sufficient testimony in the case from which a conclusion could be legitimately drawn that the plaintiff purchased the note of the payee and not from the United States National Bank. The plaintiff having purchased the note after maturity from the payee, he is not an innocent holder, but took the paper subject to the same defenses that existed between the original parties thereto. The judgment of the district court is

AFFIRMED.

THE other judges concur.