SAMUEL H. HANSEN ET AL., APPELLEES, V. THE COMMONWEALTH COMPANY, A CORPORATION, APPELLANT.

115 N. W. 2d 895

Filed June 22, 1962. No. 35183.

Ginsburg, Rosenberg & Ginsburg and Norman M. Krivosha, for appellant.

E. D. Warnsholz, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action in equity brought by Samuel H. Hansen and Emma M. Hansen, plaintiffs, against The Commonwealth Company, a corporation, defendant, in the district court for Lancaster County, to declare a loan made by the defendant to the plaintiffs to be void and uncollectible.

The trial court found that the promissory note and extensions thereof did not set forth the true and complete agreement between the parties; that the true and complete agreement between the parties called for repayment of the loan in a final, unequal, and balloon installment to be paid from the proceeds of the sale of the real estate; that such a final, unequal, and balloon installment was prohibited on all loans calling for interest charges in excess of 9 percent per annum; that said loan was void and uncollectible under the provisions of section 8-432, R. R. S. 1943, and the defendant was prohibited from collecting or receiving any portion of the principal or interest; and that the promissory note and four extensions thereof, the chattel mortgage, the real estate mortgage, and the assignment of rents should be held to be void and cancelled, and defendant should refund to plaintiffs all payments made on said loan, together with interest at the rate of 6 percent per annum computed from the date of each installment payment. Judgment was rendered in the amount of $1,688. The promissory note and four extensions thereof, the chattel mortgage, the real estate mortgage, and the assignment of rents were held to be void and cancelled. The clerk of the district court was ordered to refund to plaintiffs the payments made by them in compliance with the previous order of the court entered October 12, 1960.

The defendant filed a motion for new trial which was

overruled. The defendant perfected appeal to this court.

The plaintiffs' amended petition ·alleged that The Commonwealth Company was a Nebraska corporation, licensed as an industrial loan and investment company under the provisions of sections 8-401 to 8-433, R. R S. 1943, as amended; that on November 15, 1957, plaintiffs and defendant entered into a contract under which defendant loaned plaintiffs $2,704.20; that said loan was evidenced by a promissory note; that the loan was extended by four subsequent notes executed on March 25, 1958, September 9, 1958, February 5, 1959, and December 31, 1959; and that the plaintiffs made and the defendant accepted certain payments set forth in the plaintiffs' amended petition. The plaintiffs further alleged that the original loan and its extensions were void and uncollectible because installment payments, consisting of unequal, final balloon payments, were extended over a period of more than 36 months in violation of section 8-429, R. S. Supp., 1959; and that at the time of the negotiation of the loan, November 15, 1957, the defendant verbally informed plaintiffs and plaintiffs verbally agreed that the principal and interest of said loan would be paid in monthly installments of $50 each, beginning December 15, 1957. Plaintiffs further alleged that the defendant should refund to the plaintiffs all payments made by them, and that the loan should be cancelled. Plaintiffs prayed that the loan be declared void and uncollectible and that plaintiffs recover judgment for payments made by them, together with interest and costs.

There was a second cause of action pleaded by the plaintiffs which has been abandoned on this appeal.

The defendant's answer to the plaintiffs' amended petition admitted defendant's legal capacity, the execution of the original note and the extensions thereof as alleged in the plaintiffs' amended petition; and denied each and every allegation contained in the said petition except as specifically admitted. The defendant alleged that the loan of November 15, 1957, was made

for a 1-year period, payable in quarterly installments; that the plaintiffs failed to make the installments called for in the loan agreement; that at the plaintiffs' insistence and request, the defendant granted the extensions thereof; that at the time of making the extensions the plaintiffs represented to the defendant that they would, during the period of such extension, pay off their loan, and informed the defendant that they were in the process of selling certain real estate they owned which sale would be made before the loan became due and the loan would be paid; that the plaintiffs failed to comply with their representations and requested further extensions, assuring the defendant that they would sell their real estate and pay off the loan; that each and every extension of the loan was made at the specific request of the plaintiffs; that at no time did the defendant have any intention that the loan should run beyond 1 year from the date of the making thereof; that at no time did the defendant intend or expect to make any extension of the original loan, but in each and every instance the plaintiffs failed to make payment within the time required by the note and requested additional extensions; that none of the extensions were made at the request of the defendant, nor prearranged or planned for by the defendant; and that during the period of the extensions the plaintiffs made payments on account of their indebtedness, stating that thereby they would cut down the total indebtedness due the defendant and which would have to be paid out of the proceeds of the sale of their property.

By cross-petition the defendant alleged the execution of the note, the chattel mortgage on the house trailer, and a real estate mortgage as security for the payment of the note; and that the note and mortgage indebtedness were delinquent and unpaid. It prayed for foreclosure of the mortgages for the satisfaction of the amount due the defendant.

The plaintiffs' reply generally repeated the allega-

tions of their amended petition, and admitted payments made by them and accepted by defendant were as set forth in defendant's answer. These payments will appear in the statement of the evidence. The prayer of the reply was for the same relief as contained in the plaintiffs' amended petition.

"The design of the Installment Loan Act is to license and control the business of making installment loans and to restrict the enforcement or collection of illegal loans once they have been made." Robb v. Central Credit Corp., 169 Neb. 505, 100 N. W. 2d 57.

The sections of the statutes involved in this appeal are as follows.

Section 8-418, R. S. Supp., 1961, provides: "Any industrial loan and investment company may contract and receive on any loan, charges including interest at graduated rates not exceeding eighteen percent per annum on that part of the unpaid principal balance on any loan not in excess of one thousand dollars; not exceeding twelve per cent per annum on that part of the unpaid principal balance on any loan in excess of one thousand dollars and not in excess of three thousand dollars; not exceeding nine per cent per annum on that part of the unpaid principal balance on any loan in excess of three thousand dollars; Provided, that such graduated rates shall be computed strictly as simple interest on the unpaid principal balance for the time actually outstanding."

Section 8-429, R. S. Supp., 1961, provides in part: "Every loan made under sections 8-418 to 8-433 shall be repayable within a period of thirty-six months or less in approximately equal or declining installments of principal and interest at approximately equal intervals."

Section 8-423, R. R. S. 1943, provides in part: "All charges based upon due performance of the loan contract and computed as provided in section 8-418 may be included in the amount of any installment scheduled to be repaid by the borrower; Provided, however, that

the borrower may prepay the loan, in whole or in part, at any time and in case of such prepayment, whether in cash, extension, renewal or otherwise, the full unearned portion of the precomputed charges shall be canceled in such an amount that the charges paid by the borrower will not exceed the rates contracted for applied to the unpaid principal balance for the time actually outstanding, except that the charges retained may be increased to the extent that delinquency charges are computed in accordance with the monthly percentage agreed rates, either on a prepaid loan or a loan paid at maturity or after maturity."

Section 8-432, R. R. S. 1943, provides in part: "If the industrial loan and investment company shall fail to comply with any of the provisions of sections 8-418 to 8-433, in the making or collection of any loan which is subject to said sections, the loan shall be void and the lender shall have no right to collect and receive any principal, interest or charges."

For convenience we will refer to the plaintiff Samuel H. Hansen as Hansen, to The Commonwealth Company as defendant, and the Hansens at times as plaintiffs or Hansens.

Sumner E. Copple, called as a witness for the plaintiffs, testified that he was the president of the defendant; that a loan was made to the Hansens on November 15, 1957; that this loan was extended on March 25, 1958, September 9, 1958, February 5, 1959, and December 31, 1959; and that Marvin Copple, the vice president of the defendant, negotiated this loan and the extensions of the loan.

This witness identified the original promissory note and the extensions thereof, as follows: The original note, loan No. 27971, signed by the Hansens on November 15, 1957, was for the amount of $2,704.20. The principal and interest were payable in three payments of $991 each, one each 4 months, the first payment due on March 15, 1958, and the final payment due November

15, 1958. This note was secured by a chattel mortgage on a 1955 Mercury house trailer, a mortgage on real estate, and an assignment of rents. The agreed rate of charges on the unpaid principal balance of this note until paid was 1½ percent per month on that part of the unpaid principal balance not in excess of $1,000, 1 percent per month on that part of the unpaid principal balance in excess of $1,000, and not in excess of $3,000, and three-fourths of 1 percent per month on that part of the unpaid principal balance in excess of $3,000. Said charges were to be computed strictly as simple interest on the unpaid principal balance for the time actually outstanding, a month being any period of 30 consecutive days, and the daily rate 1/30th of the monthly rate. Further provisions in the note are unnecessary to relate.

The first extension was loan No. 28975, dated March 25, 1958. The principal amount of the note was $2,666.52. The principal and interest were payable in three payments of $952 each, one each 3 months, the first payment due on June 25, 1958, and the final payment due on December 25, 1958. The same security as appears in the original note was given. This note was executed, delivered, and accepted, not in payment, but for the purpose of extending the time of payment of a certain note dated November 15, 1957, for $2,704.20 in favor of the defendant.

The second extension was loan No. 30324, dated September 9, 1958. The principal amount of the note was $2,539.90. The principal and interest were payable in two payments of $1,336 each, one each 3 months, the first payment due December 10, 1958, and the final payment due March 9, 1959. The same security as appears in the original note, and the same extension language appears on this note as appeared on the first extension note.

The third extension was loan No. 31345, dated February 5, 1959. The principal and actual amount of the loan was $2,640.68. The principal and interest were payable

in three payments of $972 each, one each 4 months, the first payment due June 5, 1959, and the final payment due February 5, 1960, with the same security and the same language with reference to the extension as was used in the preceding extension notes.

The fourth extension was loan No. 33737, dated December 31, 1959. The principal amount of this note and actual amount of the loan was $2,619.04. The principal and interest were payable in three payments of $958 each, one each 4 months, the first payment due April 30, 1960, and the final payment due December 31, 1960, with the same security as appears in the original note, and extension provisions the same as appears in the preceding extension notes.

Each of the notes was a separate transaction as indicated by the loan numbers thereon.

There was a real estate mortgage given as security for the loan, made to the defendant by the plaintiffs, dated November 15, 1957, on real estate owned by the plaintiffs in Spencer, Nebraska. There was also a chattel mortgage given by the plaintiffs to the defendant as security for the original loan on a used 1955 Mercury house trailer on November 15, 1957. This chattel mortgage was endorsed as a first lien on the certificate of title to the trailer on November 22, 1957. There was also an assignment of rents executed by the plaintiffs to the defendant.

Sumner E. Copple further testified that each time an extension note was made, the old balance due was carried forward on such note, and no further security was asked for by the defendant; that the last payment received from the Hansens on their indebtedness was on September 8, 1960; that no payments have been made since that time; and that after giving credit for the payment of September 8, 1960, the balance owing by the Hansens to the defendant was $2,587.25, plus accrued interest from September 8, 1960.

The payments made by the Hansens to the clerk of

the district court as per order of the court were as follows:   October 25, 1960, $50; November 8, 1960, $50; December 14, 1960, $50; January 9, 1961, $50; February 9, 1961, $50; March 12, 1961, $50; and May 11, 1961, $50.   It was stipulated that the above amounts were correct.

Marvin E. Copple testified that he personally negotiated the loan with the Hansens; that at the time the loan was made he had a discussion with the Hansens regarding the method of repayment before the loan was finally signed; that they talked about the amount of money they wanted to borrow; and that Hansen said he had a house he was selling which would be sold shortly, that it had been for sale prior to the time the loan was made, that when he sold the house he would pay the loan in full, and that he would have the loan paid off before the first payment became due, which was 4 months from the time of signing the original note.   Hansen asked this witness if he could pay the loan off sooner than the 4 months, and was told that he would be charged interest for the number of days the money was borrowed, and that he was free to pay off the loan at any time he wanted to.   Hansen wanted to know if he could pay off the loan if he sold the house in the next few weeks, and he was informed that he could do so.   This witness further testified that Hansen said he wanted to pay the loan off, and that the house would definitely be sold before the first payment became due.   This witness further testified that $50 was paid on December 2, 1957; $50 on January 2, 1958; $50 on February 3, 1958; and $50 on March 4, 1958.   On March 28, 1958, the loan was extended.   At that time a discussion was had about the extension of the loan, and this witness told Hansen that he wanted the loan paid off.   Hansen said that he did not have the money to pay it, that the house had not been sold but was still for sale, and that as soon as it was sold the loan would be paid.   Then Hansen asked if he could have the loan extended until the house was sold.   On March 28, 1958, Hansen promised that he

would be able to pay the loan in full before the next payment became due. When the second extension was made, there was the same type of discussion as before. Hansen again said he wanted to pay the loan but was unable to do so. On February 5, 1959, the house had not been sold. Hansen said the house would be sold before the first payment on the extension note of February 5, 1959, became due. At the time of the fourth extension note, this witness had the same type of discussion with Hansen as on the previous occasions when the extensions were made. Each and every time the original note was extended, Hansen stated that he would be able to pay off the loan before any of the payments due thereon would have to be made.

Marvin E. Copple further testified that the payments made by Hansen on the November 15, 1957, loan as extended were as follows: April 7, 1958, $50; May 6, 1958, $50; June 9, 1958, $50; July 7, 1958, $50; August 4, 1958, $50; and September 2, 1958, $50. The loan was extended on September 9, 1958, then payments were made by Hansen as follows: October 6, 1958, $50; November 10, 1958, $50; December 8, 1958, $50; January 12, 1959, $50; March 10, 1959, $50; April 20, 1959, $50; May 18, 1959, $50; June 15, 1959, $50; July 27, 1959, $50; September 22, 1959, $50; October 19, 1959, $50; December 1, 1959, $50; January 19, 1960, $8.21; May 24, 1960, $80; June 25, 1960, $75; July 22, 1960, $75; August 24, 1960, $75; and September 8, 1960, $75.

This witness further testified that during the time the payments of $50 a month were being made there was a discussion with Hansen concerning these payments. Hansen was told that these payments were inadequate and were not being made in accordance with the contract, and that the defendant wanted the note paid off as per schedule of the loan and as it was set up, not at the rate of $50 a month. When Hansen was told this, he said he could not pay the loan off and that the only way he could pay off the loan would be when he sold his

house in Spencer. This witness further testified that at the time the plaintiffs signed the original note they were told that even if they did not sell the house, they would be expected to make payments in accordance with the terms of the note; and that if Hansen wanted to make prepayments, he could do so. The first payment made by Hansen was within 17 days after the loan was made. Each time this loan became delinquent or the extension notes became delinquent, Hansen was contacted and always requested an extension of the original note for the reason that he had not sold his house and said that when he did so he would pay the loan. The evidence is rather extensive on this point and need not be discussed further.

This witness further testified that at no time was there any agreement that this loan was to be paid off at the rate of $50 a month. At no time were the plaintiffs advised that they would be obligated to pay the loan in any manner other than that set forth in the written instrument which they signed. Every extension was made in reliance on Hansen's representations that he was negotiating the sale of the house and would have it sold within a reasonably short time. The defendant had no alternative other than to extend the loan or foreclose the mortgages given as security for the loan.

Louis Klasna testified that he was engaged in the real estate and insurance business at Spencer, Nebraska; that he was acquainted with the Hansen property and was engaged to negotiate a sale of this property; that Hansen called him on March 24, 1960, to list the property for sale at $2,100 and to put an ad in the paper, which he did; that before March 1960, he was not representing Hansen but was representing a prospective buyer; and that the deal with the prospective buyer fell through on October 1, 1959.

Samuel H. Hansen testified that on November 15, 1957, he negotiated a loan with the defendant, the amount of which was $2,704.20; that he talked to Marvin Copple

about signing the papers; that he needed the money for the purpose of purchasing a trailer house; that he was to give the abstract to his property in Spencer to be held as security; that he was to pay $50 a month until he sold the property; that Marvin Copple agreed to that arrangement; that when he sold his property he was going to pay the loan in full; and that Marvin Copple called him in a few times and tried to get him to sell the house.

On cross-examination this witness testified that when he talked to Marvin Copple he had some people who were interested in the house and to whom he was selling the house for $3,000, but the deal fell through; that he and his wife thought the house would be sold; that Marvin Copple told him that he would make out his loan for 1 year and whenever the house was sold the loan could be paid off; and that he told Marvin Copple that he was going to try again to sell the house to another party and this deal ran for quite a while and then fell through. He then told Klasna to list the property and see what he could do about selling it. Up to the time the deal fell through on October 1, 1959, Hansen thought he had the property sold to a Mr. Harris. Marvin Copple told Hansen to dispose of the property so that he could make a settlement, that the loan was delinquent, and that the defendant could not carry it any longer. Hansen said he would put the house up for sale at auction rather than have a foreclosure. At the time the loan was made, Hansen asked Marvin Copple if he had a right to make any prepayments at any time, and was told he could pay any amount at any time.

Mrs. Samuel H. Hansen testified that she was present when the loan was made; that Marvin Copple was told that $50 a month was the amount that they could pay as they were paying on a trailer, and Marvin Copple said that would be all right; and that Marvin Copple was told that when the house in Spencer was sold the loan would be paid in one lump sum. This witness further

testified that she did not read the note before it was signed, and that no one tried to stop her from reading it.

The defendant assigns as error that the trial court erred in admitting in evidence parol evidence to contradict and vary the terms of the written instrument in suit; in finding that the loan in question provided for payment by a final, unequal, and balloon installment in violation of section 8-429, R. S. Supp., 1961; in finding that the loan in question was void and uncollectible under the provisions of section 8-432, R. R. S. 1943; in failing to find that the defendant was entitled to a foreclosure of the chattel mortgage and the real estate mortgage held by the defendant; and in failing to grant defendant judgment as prayed for in its cross-petition.

The burden of proving usury in an action on a promissory note rests upon the party charging it unless usury is apparent on the face of the note. See Nitzel & Co. v. Nelson, 144 Neb. 662, 14 N. W. 2d 197.

This being an action in equity it became the duty of this court to retry the issue or issues of fact in the finding or findings of fact complained of upon the evidence contained in the bill of exceptions, and upon trial de novo of such questions of fact to reach an independent conclusion as to what findings were required upon the pleadings and all of the evidence without reference to the conclusion reached in the district court. § 25-1925, R. R. S. 1943.

The defendant objected to the introduction of parol testimony given by the plaintiffs relating to payments on the loan at $50 a month and payment of the remaining indebtedness on the loan when they sold their house in Spencer, Nebraska, for the reason that such oral testimony was an attempt to contradict and change the terms of a written instrument and the extension notes relating thereto, and that such evidence was incompetent. This objection was overruled and such evidence was admitted.

In Curtis v. Securities Acceptance Corp., 166 Neb. 815, 91 N. W. 2d 19, this court said: "Since usury is generally accompanied by device, subterfuge, scheme, and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form, and the right to relief will not be denied because parol proof of the usurious character of the transaction contradicts a written instrument."

Parol testimony is not admissible where it is offered for the purpose of proving by parol some other agreement as to the contractual terms and the method of payment other than that specified in the writing. See 55 Am. Jur., Usury, § 166, p. 439.

The following, while not similar in facts to the instant case, does apply here.

As stated in Blindman v. Industrial Loan & Thrift Corp., 197 Minn. 93, 266 N. W. 455, 104 A. L. R. 1253: "The usury claim now presented by the plaintiffs is that prior to the signing of the note there was an oral agreement between the plaintiffs and the defendant that the note should be paid in four monthly instalments, on the 18th day of January, February, March, and April, 1932. The note itself reserved no interest before maturity, and the legal rate of six per cent after maturity. Plaintiffs rely solely on this oral agreement that the note, in contradiction to its plain terms, was payable in monthly instalments instead of in four months from date. * * * The question is squarely presented whether, as found by the trial court, this oral agreement that the note should be paid on dates different from those stated therein can here be shown for the purpose of establishing usury. The evidence of this alleged oral promise or agreement not only contradicts the terms of the note itself, but it is in contradiction of the general rule that parol evidence cannot be shown for the purpose of varying the terms of a written contract made, covering the same subject, prior to the execution and delivery of the note. * * *

There are numerous cases holding that on the question of usury parol evidence may be received to vary the terms of a written contract for the purpose of showing that it is illegal. There is a minority of decisions to the contrary. * * * Few, if any, of the decisions apply the majority rule where the oral evidence varies and contradicts the express terms of the note or contract sued upon in other respects than in reference to the consideration. To allow the time of payment to be changed by parol evidence, while the contract is still executory, is a very different process from using similar proof to show conduct of the parties in performance of it, where it has been executed in whole or in part. The distinction is clearly noted in Koehler v. Dodge, 31 Neb. 328, 334, 47 N. W. 913, 914, 28 A. S. R. 518, * * *."

In Koehler v. Dodge, 31 Neb. 328, 47 N. W. 913, 28 Am. S. R. 518, it was said: "It appears from the tenth finding that at the time of the making of the four notes which were renewed by the notes in suit it was agreed between the defendants and the payee that the makers should pay interest thereon from their date at the rate of eighteen per cent, instead of ten per cent as expressed on their face. It is argued by counsel that the parol contemporaneous agreement to pay a usurious rate of interest did not taint the notes with usury. It is doubtless true that when a person borrows money and gives his note therefore, specifying a lawful rate of interest, a verbal promise of the borrower made at the time the indebtedness is incurred to pay an unlawful rate of interest for the use of the money would not of itself make the transaction usurious." Cases are cited.

In A-1 Finance Co., Inc. v. Nelson, 165 Neb. 296, 85 N. W. 2d 687, the lender was prevented from showing that the oral agreement was different from the written agreement for the reason that the oral agreement varied and contradicted the terms of the written agreement.

In Perry v. Gross, 155 Neb. 662, 53 N. W. 2d 73, it was said: "Also the parol evidence rule is not merely

one of evidence. It is one of substantive law as well. As a rule of substantive law it renders ineffective proof of an oral prior or contemporaneous agreement the effect of which would be to vary, alter, or contradict the terms of a written agreement." Cases are cited.

In the instant case there was no contention made by the plaintiffs in their pleadings that the defendant exacted and received interest in excess of that permitted by law. What the plaintiffs contended for, and what the trial court determined by its judgment, was that the payment of the loan was in unequal installments and included a balloon payment. There is no contention on the part of the plaintiffs in their pleadings that they in any respect paid or contracted to pay more than the legal rate of interest.

The parol evidence in the instant case was not offered for the purpose of showing a contract to pay or the actual payment of usury, but for the purpose of showing that the note was not to be paid in accordance with its terms. In the light of the foregoing authorities relating to the admissibility of parol evidence in usury cases, the trial court erroneously admitted parol evidence over objection to be introduced in this case.

With reference to any preponderance of the evidence on the part of the plaintiffs to prove their case, there is positive evidence on the part of the defendant that the loan was made for a term as set forth in the original note, with the understanding that the plaintiffs could repay when they sold their house. There is, opposing thereto, the evidence of the plaintiffs that they told the defendant that they could only pay $50 a month. Plaintiffs do not deny that they told the defendant that before the note became due they would have their house sold and would be able to pay the loan. It appears that this evidence is entirely consistent with the defendant's understanding that the first payment, which was due in 3 months, would actually be anticipated by the sale of the house prior to that date.

We conclude that the judgment of the trial court should be reversed and the cause remanded with instructions to grant the defendant foreclosure of its security as prayed for in its cross-petition, that the plaintiffs' cause of action should be dismissed with prejudice, and that the trial court should render judgment in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

SPENCER, J., not participating.